# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# VICTORIA DIVISION

| | |
|---|---|
| STATE OF TEXAS,<br><br>  *Plaintiff*,<br><br>v.<br><br>The UNITED STATES OF AMERICA; DAVID PEKOSKE, Acting Secretary of the United States Department of Homeland Security, in his official capacity; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; TROY MILLER, Senior Official Performing the Duties of the Commissioner of U.S. Customs and Border Protection, in his official capacity; U.S. CUSTOMS AND BORDER PROTECTION; TAE JOHNSON, Acting Director of U.S. Immigration and Customs Enforcement, in his official capacity; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TRACY RENAUD, Senior Official Performing the Duties of the Director of the U.S. Citizenship and Immigration Services, in her official capacity; U.S. CITIZENSHIP AND IMMIGRATION SERVICES,<br><br>  *Defendants*. | Civ. Action No. _____ |

# EXHIBIT B



*Secretary*
**U.S. Department of Homeland Security**
Washington, DC 20528

January 20, 2021

| | |
|---|---|
| MEMORANDUM FOR: | Troy Miller<br>Senior Official Performing the Duties of the Commissioner<br>U.S. Customs and Border Protection |
| | Tae Johnson<br>Acting Director<br>U.S. Immigration and Customs Enforcement |
| | Tracey Renaud<br>Senior Official Performing the Duties of the Director<br>U.S. Citizenship and Immigration Services |
| CC: | Karen Olick<br>Chief of Staff |
| FROM: | David Pekoske<br>Acting Secretary |
| SUBJECT: | **Review of and Interim Revision to Civil Immigration Enforcement and Removal Policies and Priorities** |

This memorandum directs Department of Homeland Security components to conduct a review of policies and practices concerning immigration enforcement. It also sets interim policies during the course of that review, including a 100-day pause on certain removals to enable focusing the Department's resources where they are most needed. The United States faces significant operational challenges at the southwest border as it is confronting the most serious global public health crisis in a century. In light of those unique circumstances, the Department must surge resources to the border in order to ensure safe, legal and orderly processing, to rebuild fair and effective asylum procedures that respect human rights and due process, to adopt appropriate public health guidelines and protocols, and to prioritize responding to threats to national security, public safety, and border security.

This memorandum should be considered Department-wide guidance, applicable to the activities of U.S. Immigration and Customs Enforcement (ICE), U.S. Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS).

### A. Comprehensive Review of Enforcement Policies and Priorities

The Chief of Staff shall coordinate a Department-wide review of policies and practices concerning immigration enforcement. Pursuant to the review, each component shall develop recommendations to address aspects of immigration enforcement, including policies for prioritizing the use of enforcement personnel, detention space, and removal assets; policies governing the exercise of prosecutorial discretion; policies governing detention; and policies regarding interaction with state and local law enforcement. These recommendations shall ensure that the Department carries out our duties to enforce the law and serve the Department's mission in line with our values. The Chief of Staff shall provide recommendations for the issuance of revised policies at any point during this review and no later than 100 days from the date of this memo.

The memoranda in the attached appendix are hereby rescinded and superseded.

### B. Interim Civil Enforcement Guidelines

Due to limited resources, DHS cannot respond to all immigration violations or remove all persons unlawfully in the United States. Rather, DHS must implement civil immigration enforcement based on sensible priorities and changing circumstances. DHS's civil immigration enforcement priorities are protecting national security, border security, and public safety. The review directed in section A will enable the development, issuance, and implementation of detailed revised enforcement priorities. In the interim and pending completion of that review, the Department's priorities shall be:

1. **National security.** Individuals who have engaged in or are suspected of terrorism or espionage, or whose apprehension, arrest and/or custody is otherwise necessary to protect the national security of the United States.
2. **Border security.** Individuals apprehended at the border or ports of entry while attempting to unlawfully enter the United States on or after November 1, 2020, or who were not physically present in the United States before November 1, 2020.
3. **Public safety.** Individuals incarcerated within federal, state, and local prisons and jails released on or after the issuance of this memorandum who have been convicted of an "aggravated felony," as that term is defined in section 101(a) (43) of the Immigration and Nationality Act at the time of conviction, and are determined to pose a threat to public safety.

These priorities shall apply not only to the decision to issue, serve, file, or cancel a Notice to Appear, but also to a broad range of other discretionary enforcement decisions, including deciding: whom to stop, question, and arrest; whom to detain or release; whether to settle, dismiss, appeal, or join in a motion on a case; and whether to grant deferred action or parole. In

addition, all enforcement and detention decisions shall be guided by DHS's ability to conduct operations and maintain custody consistent with applicable COVID-19 protocols.

While resources should be allocated to the priorities enumerated above, nothing in this memorandum prohibits the apprehension or detention of individuals unlawfully in the United States who are not identified as priorities herein. In order to ensure appropriate allocation of resources and exercise of prosecutorial discretion, the Acting Director of ICE shall issue operational guidance on the implementation of these priorities. This guidance shall contain a protocol for the Acting Secretary to conduct a periodic review of enforcement actions to ensure consistency with the priorities set forth in this memorandum. This guidance shall also include a process for the Director of ICE to review and approve of any civil immigration enforcement actions against individuals outside of federal, state or local prisons or jails.

These interim enforcement priorities shall go into effect on February 1, 2021 and remain in effect until superseded by revised priorities developed in connection with the review directed in section A.

### C. Immediate 100-Day Pause on Removals

In light of the unique circumstances described above, DHS's limited resources must be prioritized to: (1) provide sufficient staff and resources to enhance border security and conduct immigration and asylum processing at the southwest border fairly and efficiently; and (2) comply with COVID-19 protocols to protect the health and safety of DHS personnel and those members of the public with whom DHS personnel interact. In addition, we must ensure that our removal resources are directed to the Department's highest enforcement priorities. Accordingly, and pending the completion of the review set forth in section A, I am directing an immediate pause on removals of any noncitizen[1] with a final order of removal (except as noted below) for 100 days to go into effect as soon as practical and no later than January 22, 2021.

The pause on removals applies to any noncitizen present in the United States when this directive takes effect with a final order of removal except one who:

1. According to a written finding by the Director of ICE, has engaged in or is suspected of terrorism or espionage, or otherwise poses a danger to the national security of the United States; or
2. Was not physically present in the United States before November 1, 2020; or
3. Has voluntarily agreed to waive any rights to remain in the United States, provided that he or she has been made fully aware of the consequences of waiver

---

[1] "Noncitizen" as used in this memorandum does not include noncitizen nationals of the United States.

    and has been given a meaningful opportunity to access counsel prior to signing the waiver;[2] or

  4. For whom the Acting Director of ICE, following consultation with the General Counsel, makes an individualized determination that removal is required by law.

No later than February 1, 2021, the Acting Director of ICE shall issue written instructions with additional operational guidance on the further implementation of this removal pause. The guidance shall include a process for individualized review and consideration of the appropriate disposition for individuals who have been ordered removed for 90 days or more, to the extent necessary to implement this pause.  The process shall provide for assessments of alternatives to removal including, but not limited to, staying or reopening cases, alternative forms of detention, custodial detention, whether to grant temporary deferred action, or other appropriate action.

  **D.**  **No Private Right Statement**

  These guidelines and priorities are not intended to, do not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter.

---

[2] A voluntary waiver encompasses noncitizens who stipulate to removal as part of a criminal disposition.

# APPENDIX

Department of Homeland Security, *Enforcement of the Immigration Laws to Serve the National Interest,* Memorandum of February 20, 2017.

U.S. Immigration and Customs Enforcement, *Implementing the President's Border Security and Interior Immigration Enforcement Policies*, Memorandum of February 20, 2017.

U.S. Immigration and Customs Enforcement, *Guidance to OPLA Attorneys Regarding the Implementation of the President's Executive Orders and the Secretary's Directives on Immigration Enforcement*, Memorandum of August 15, 2017.

US Citizenship and Immigration Services, *Updated Guidance for the Referral of Cases and Issuance of Notices to Appear (NTAs) in Cases Involving Inadmissible and Deportable Aliens,* Policy Memorandum of June 28, 2018.  (US Citizenship and Immigration Services should revert to the preexisting guidance in Policy Memorandum 602-0050, US Citizenship and Immigration Services, *Revised Guidance for the Referral of Cases and Issuance of Notices to Appear (NTAs) in Cases Involving Inadmissible and Removable Aliens*, Policy Memorandum of Nov. 7, 2011.)

US Citizenship and Immigration Services, *Guidance for the Referral of Cases and Issuance of Notices to Appear (NTAs) When Processing a Case Involving Information Submitted by a Deferred Action for Childhood Arrivals (DACA) Requestor in Connection with a DACA Request or a DACA-Related Benefit Request (Past or Pending) or Pursuing Termination of DACA,* Policy Memorandum of June 28, 2018.

U.S. Customs and Border Protection, *Executive Orders 13767 and 13768 and the Secretary's Implementation Directions of February 17, 2017*, Memorandum of February 21, 2017.