# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | |
|---|---|
| STATE OF TEXAS,<br><br>     Plaintiff,<br><br> v.<br><br>UNITED STATES OF AMERICA, *et al.*<br><br>     Defendants. | No. 6:21-cv-00003 |

## DEFENDANTS' STATEMENT IN RESPONSE TO
## COURT'S JANUARY 26, 2021 ORDER

On January 22, 2021, Texas filed a Complaint, ECF No. 1, and a Motion for Temporary Restraining Order (TRO), ECF No. 2, seeking to enjoin implementation of an interim memorandum setting forth federal immigration enforcement discretion by the Department of Homeland Security (DHS) while it reassessed its priorities. Texas alleged that this change in federal enforcement discretion was contrary to law and contrary to a purported "Agreement," i.e., an alleged memorandum of understanding (MOU) entered between Texas and DHS. *See* Compl. ¶¶ 38–72. The Court held a hearing later that same day; Defendants filed their opposition, ECF No. 8, and the Court held a second hearing on January 25, 2021. On January 26, 2021, the Court entered a temporary restraining order (Order) partially enjoining DHS's interim policy for 14 days. ECF No. 16.

The Court also ordered the parties to propose a briefing schedule for Texas's request for a preliminary injunction and to address whether expedited discovery is necessary. *Id.* at 17. Defendants respectfully submit this response to the Court's Order, and respectfully request a decision on any motion for a preliminary injunction on or before February 9, 2021.

## I. Briefing should be complete in time for the Court to rule before the Order expires.

The Court has entered an Order partially enjoining DHS's interim memorandum. That Order expires of its own terms on February 10, 2021. *See* ECF No. 16 at 17 n.7. It is in the interests of the parties that the Court rule on any motion for preliminary injunction before the expiration of the

Order—that is, to rule on or before February 9, 2021. Because the Order issued after notice and an adversary hearing, any extension of the Order beyond the initial 14-day period is potentially subject to immediate appeal. *Sampson v. Murray*, 415 U.S. 61, 87–88 (1974); *see also Belo Broad. Corp. v. Clark*, 654 F.2d 423, 426 (5th Cir. 1981) ("The label [TRO or preliminary injunction] appended by the requesting party or the judge is not conclusive as to its proper characterization."); *Dilworth v. Reiner*, 343 F.2d 226, 229 (5th Cir. 1965) (noting that when the opposing party has notice of an application for a temporary restraining order, such order does not differ functionally from a preliminary injunction).

Speedy resolution of a motion for preliminary injunction is especially urgent now that the Court has enjoined the government's enforcement discretion and done so on a nationwide basis. As the Supreme Court has long recognized, the executive has "discretion to abandon" a removal action and to "decline to execute a final order of deportation," whether for "humanitarian reasons or simply for its own convenience." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483–84 (1999) (citation omitted). Each day the government is prevented from pursuing its lawful objectives causes severe harm, not only to the government but also to the public. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) (recognizing in immigration case that interests of government and public "merge"). As it stands, the Court's Order significantly burdens the exercise of executive discretion afforded by the Constitution and by Congress. U.S. Const. art. I, § 8, cl. 4; *id.* art. II, § 1, cl. 1; 8 U.S.C. § 1101 *et seq.*; *see Arizona v. United States*, 567 U.S. 387, 395–97 (2012). "[A]ny policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations [and] the war power." *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952). "Because decisions in these matters may implicate 'relations with foreign powers,' or involve 'classifications defined in the light of changing political and economic circumstances,' such judgments 'are frequently of a character more appropriate to either the Legislature or the Executive.'" *Trump v. Hawaii*, 138 S. Ct. 2392, 2418–19 (2018) (quoting *Mathews v. Diaz*, 426 U.S. 67, 81 (1976)). The United States is confronting significant operational challenges at the southwest border and, moreover, "the most serious global public health crisis in a century." Pekoske Mem. at 1, ECF 2-2. This global public health crisis affects nearly every aspect of government operations, including immigration enforcement operations. *Id.*

DHS has determined that an operational pause on certain removals is necessary to allow it to determine how best to address this and other issues inherent to an agency with limited resources; the Court's Order interferes with the exercise of those important sovereign powers.

The United States accordingly has a substantial interest in quickly obtaining resolution—including on appeal if necessary—of Texas's claim for preliminary relief. Defendants therefore respectfully request that the Court either rule on Texas's motion for a preliminary injunction on or before February 9, 2021, or expressly convert its January 26, 2021 Order to a preliminary injunction by that date.

Defendants defer to the Court as to the time it needs to resolve the motion in that timeframe, but propose the following briefing schedule, with corresponding word limits given the complexities of the issues involved:

> January 29, 2021 – Texas's Motion at 10,000 words
> February 3, 2021 – Defendants' Opposition at 10,000 words
> February 5, 2021 – Texas's Reply at 5,000 words
> February 8, 2021 – Motion Hearing

Texas previously represented to the Court that it was prepared to file its motion for a preliminary injunction on or before January 29, 2021. *See* Jan. 22, 2021 Hr'g Tr. at 73:2–73:9. The only thing that has changed since that representation is that Texas has obtained, temporarily, the relief it seeks. Adhering to the deadline Texas initially proposed, or offering only a brief adjustment that still allows a decision by February 9, will give the parties sufficient time to brief the issues—which they have already briefed once—and the Court sufficient time to resolve them before expiration of the Order.

## II. Expedited discovery and early production of an administrative record is unnecessary and unwarranted.

Texas previously indicated that its contemplated motion for a preliminary injunction could be resolved on the papers and with declarations. *See* Jan. 22, 2021 Hr'g Tr. at 5:6–5:8. Defendants agree: the parties should brief any motion for a preliminary injunction before engaging in discovery. Proceeding in this way is consistent with Texas's earlier representations to the Court, consistent with

governing principles of administrative law, consistent with the Federal Rules, and consistent with ordinary practice. And the discovery Texas now contemplates is both unnecessary and impracticable in any event.

Should the Court disagree, however, and delay briefing on the preliminary injunction motion to allow for limited discovery, Defendants expect to seek comparable discovery related to Texas's standing and its claims related to the MOU.

1. The threshold barriers to Texas's claims, such as jurisdiction, preclude discovery.

The Supreme Court has cautioned that serious questions going to jurisdiction or other justiciability doctrines must be "take[n] into account in assessing the burdens of discovery." *See United States v. U.S. Dist. Court for Dist. of Oregon*, 139 S. Ct. 1 (2018); *In re United States*, 138 S. Ct. 443, 445 (2017). Especially given the weighty separation-of-powers concerns presented by judicial intervention in federal immigration enforcement discretion, the Court should definitively resolve those preliminary issues, at the motion to dismiss stage, before subjecting the government to the burden of intrusive discovery.

Texas cannot overcome multiple threshold legal principles that categorically bar its claims. To order discovery when the Court lacks the power to adjudicate the underlying claims, or the claims fail as a matter of law, turns the judicial process on its head.

- Texas has not demonstrated any injury caused by the memorandum, as the Constitution requires for Article III standing. Texas's bare allegation of a speculative general budgetary harm is inadequate to establish standing at the preliminary injunction stage. *Compare* Compl. ¶ 5, *with Crane v. Johnson*, 783 F.3d 244, 252 (5th Cir. 2015). Nor can Texas rely on evidence of harm, *see* ECF No. 2-4 (April 2018 declaration); ECF 2-5 (April 2018 declaration), that predates the challenged action that allegedly causes the injury: an effect cannot precede its cause.

- The Court also lacks statutory jurisdiction because Congress has barred judicial review of decisions related to the "the initiation or prosecution of various stages in the deportation process." *Texas v. United States*, 809 F.3d 134, 165 (5th Cir. 2015), *as revised* (Nov. 25, 2015); *see* 8 U.S.C. § 1252(g).

- The agency's decision whether to execute removal orders is an enforcement decision committed to agency discretion. *See Heckler v. Chaney*, 470 U.S. 821, 832 (1985) (holding that an agency's decision not to exercise its enforcement authority, or to exercise it in a particular way, is "presumed" to be "immune from judicial review under § 701(a)(2)" of the APA); *Am.-Arab Anti-Discrimination Comm.*, 525 U.S. at 484 (emphasizing executive discretion to "decline to execute a final order of deportation"). And no party has standing "to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).

- The challenged action is not "final agency action" because it does not make any final determination as to anything. The memorandum does not change any person's legal status, determine any legal benefits, or reverse any final order of removal. Quite the opposite: the memorandum *preserves* the status quo that orders of removal remain in place; it does not determine or effect any change to legal "rights or obligations." *See Bennett v. Spear*, 520 U.S. 154, 178 (1997). Aliens subject to a final order of removal have no legal right to remain in the U.S. after the memorandum to the exact same extent as they did before. That point is underscored by the memorandum's plain text indicating that it does not "create any right or benefit." Pekoske Mem. at 4.

- Texas is not a proper party to enforce § 1231. That statutory provision does not "create any substantive or procedural right or benefit that is legally enforceable by *any* party against" the government. 8 U.S.C. § 1231(h). A plaintiff in an APA action, moreover, must be "'arguably within the zone of interests to be protected or regulated by the statute' that he says was violated." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012) (quoting *Ass'n of Data Processing Service Orgs. v. Camp,* 397 U.S. 150, 153 (1970)). The focus of this inquiry, using tools of statutory interpretation, is "whether [the plaintiff] falls within the class of plaintiffs Congress has authorized to sue" under the applicable statute. *Lexmark Int'l, Inv. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014). Section 1231 governs the relationship between "an alien [who] is ordered removed" and the federal government. At a minimum, Texas is not within

the "class of plaintiffs Congress has authorized to sue" to enforce § 1231(a)(1)(A), *see* 8 U.S.C. § 1231(h).

- The MOU is invalid and unenforceable because it attempts an unlawful delegation of federal power, was entered without statutory authorization, and was entered without consideration. *Biodiversity Assocs. v. Cables*, 357 F.3d 1152, 1172 (10th Cir. 2004); *Stone v. Mississippi*, 101 U.S. 814, 817 (1880); *U.S. Telecom Ass'n v. F.C.C.*, 359 F.3d 554, 565 (D.C. Cir. 2004); *Trauma Service Group v. United States*, 104 F.3d 1321, 1325 (Fed. Cir. 1997).

- The MOU cannot be enforced by an order of specific performance because the United States has not waived sovereign immunity for such claims. *See Lane v. Pena*, 518 U.S. 187, 192 (1996). Claims for monetary damages must proceed in the Court of Federal Claims. *Suburban Mortg. Assocs., Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 480 F.3d 1116, 1128 (Fed. Cir. 2007).

These threshold arguments preclude the Court from reaching the merits of Texas's claims and thereby render any discovery categorically inappropriate. But for present purposes it is enough to recognize that "the justiciability of those claims presents substantial grounds for difference of opinion," and that discovery is inappropriate prior to adjudication of the threshold legal issues on a motion to dismiss. *U.S. Dist. Court for Dist. of Oregon*, 139 S. Ct. at 1; *see In re United States*, 138 S. Ct. 443.

2.  Discovery of any type is unwarranted in a challenge to agency action.

Even setting all that aside, expedited discovery is unwarranted in this case. As Texas itself has recognized, discovery is unnecessary to resolve Texas's contemplated motion for a preliminary injunction. *See* Jan. 22, 2021 Hr'g Tr. at 5:6–5:8. Texas's claims represent pure legal issues: whether the challenged memorandum is subject to judicial review; if it is subject to review, whether the memorandum is consistent with law; whether the alleged MOU, ECF 2-1, is enforceable; and if the MOU is enforceable, whether the memorandum was issued consistent with that MOU. None of these claims requires factual discovery; they present purely legal issues.

Despite its earlier representations, Texas has now indicated it will seek discovery in three categories. First, Texas seeks early production of an administrative record. Second, Texas seeks

additional operational and historical data concerning DHS operations. Third, Texas seeks emails related to DHS's implementation of the memorandum. None is warranted.

"[E]xpedited discovery is not the norm." *St. Louis Grp., Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 240 (S.D. Tex. 2011) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 623 (N.D. Ill. 2000)). Courts in this district often use a "good cause" standard to assess the propriety of a request for expedited discovery. *See St. Louis Grp., Inc.*, 275 F.R.D. at 239. The party seeking discovery bears the burden to show good cause, which "may be found 'where the need for expedited discovery in consideration of the administration of justice, outweighs the prejudice to the responding party.'" *Id.* (quoting *Energy Prod. Corp. v. Northfield Ins. Co.,* 2010 WL 3184232, at * 3 (E.D. La. Aug. 6, 2010)). Texas cannot demonstrate a need, at this juncture, for any of its contemplated discovery.

                    *a. Early production of an administrative record is unnecessary.*

Production of an administrative record at this early stage is unnecessary and out of step with ordinary APA litigation. *See, e.g.*, D.D.C. L. Civ. R. 7(n)(1) (filing of administrative record after answer); D. Kansas L. Civ. R. 83.1(c)(1) (filing of administrative record with answer); D. Utah L. Civ. R. 7-4(a)(4–5) (filing of administrative record after ruling on motion to dismiss). Neither an exercise of enforcement discretion nor non-final agency action—both of which describe the interim memorandum—need to be supported by an administrative record at all. Such decisions are entirely beyond judicial review, and therefore may be made without compiling any administrative record. *See Chaney*, 470 U.S. at 832; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990). More broadly, "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Because requiring an agency to identify what should be included in and to compile the administrative record can be involved and would often delay resolution of a motion for a preliminary injunction, courts frequently rule on motions for preliminary relief without the administrative record. *See, e.g.*, *Washington v. United States Dep't of State*, 443 F. Supp. 3d 1245 (W.D. Wash. 2020).

Texas told the Court that its motion for preliminary injunction could be resolved on the papers and attached declarations. Jan. 21, 2021 Hr'g Tr. at 5:6–5:8. It was right.

*b. Discovery beyond the administrative record is unavailable.*

This case is a challenge to agency action. That action is not "final agency action," and thus not subject to judicial review *at all.* But, regardless, judicial review of agency action is limited to "the whole record or those parts of it cited by the party." 5 U.S.C. § 706; *Fla. Power & Light Co. v. Lorio,* 470 U.S. 729, 743-44 (1985). Thus, when there is a "contemporaneous explanation" for an agency's decision, its validity "must . . . stand or fall on the propriety of that finding." *Camp v. Pitts,* 411 U.S. 138, 143 (1972). "If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co.,* 470 U.S. at 744.

A court reviewing agency action under the APA is not "permitted to consider evidence outside the administrative record." *State of La., ex rel. Guste v. Verity,* 853 F.2d 322, 327 n.8 (5th Cir. 1988). For that reason, cases like this one, which proceed, if at all, on an administrative record, are exempt from a Rule 26(f) conference all together. *See* Fed R. Civ. P. 26(a)(1)(B)(i); 26(f)(1). As courts in this Circuit have long recognized, discovery "aimed at discovering matters not in the administrative record would be inappropriate." *Malone Mortg. Co. Am. v. Martinez,* No. 3:02-CV-1870-P, 2003 WL 23272381, at *2 (N.D. Tex. Jan. 6, 2003). Because the validity of the agency action "must . . . stand or fall" on the record before the agency, *Camp,* 411 U.S. at 143, information and documents that Texas seeks *beyond* the administrative record "are legally irrelevant, and therefore are not discoverable under Fed. R. Civ. P. 26," *Exxon Corp. v. Dep't of Energy,* 91 F.R.D. 26, 33 (N.D. Tex. 1981) (Higginbotham, J.).

Thus, information in Texas's second and third categories—operational statistics and internal agency emails—is not discoverable in this action. Texas's proposed discovery would require Defendants to divert resources from answering the Court's questions to answering Texas's questions, or else to divert resources from Defendants' ordinary functions and operations protecting national

security. Defendants have no objection to providing important context to the Court to the extent feasible. But Texas's separate requests for current and historical operational statistics are simply not relevant to its claims concerning the legality of the challenged action. Moreover, as Defendants have previously explained, the data of the type Texas now seeks is not necessarily readily available and would take substantial time to produce and interpret. Jan. 25, 2021 Hr'g Tr. at 22:5–22:17. Defendants are already working diligently to address the information that the Court requested they include in their opposition to the motion for a preliminary injunction.[1] *See id.* at 24:19–24:24; *see also id.* at 20:16–22:4.

Nor are emails concerning "implementation" of the memorandum relevant to any claim. And the burden in producing such emails is extreme—it is not nearly so simple as running a search. Rather, responding to such a request requires reserving time to access multiple agencies' databases, performing the searches, uploading the emails for agency privilege review, processing of any redactions, and production in useable form. It is unrealistic and potentially impossible to respond to such a discovery request in the manner contemplated by Texas. It would also be fruitless: internal agency emails are also likely to be subject to claims of attorney-client or deliberative process privilege and therefore are unlikely to be produced in any event. Litigation over those documents—which, again, are "legally irrelevant"—would needlessly consume the time of the Court and parties. In addition, as discussed below, Defendants would seek reciprocal discovery if discovery were allowed and that would also consume the parties' time.

Texas's requests are far-ranging and burdensome. It is no answer that Texas's requests are "narrow" or "targeted." In the context of a preliminary injunction motion, they are not. Defendants respectfully request the Court deny Texas's request for expedited discovery.

*c. Any ordered discovery should be reciprocal.*

To the extent the Court orders discovery, then it should likewise provide Defendants an opportunity to request discovery of Texas. In particular, Defendants would anticipate seeking discovery on Texas's basis for standing and the entry of the MOU. Defendants do not believe either

---

[1] Defendants are separately collecting information in response to the Court's January 25, 2021 minute order and will provide that information as soon as possible. *See* Defs.' Notice, ECF No. 18.

party should be burdened by discovery in this expedited posture but any burden, should it go forward, should be reciprocal. In such a scenario, Texas should provide responses to Defendants' discovery requests at the time Texas files its motion for preliminary injunction.

\* \* \*

The Court's Order is seriously detrimental to important sovereign interests of the United States. Texas previously represented that it could file its motion by January 29, 2021, and that the motion could be resolved on the papers and declarations. Nothing has changed in the interim that would undermine those previous positions. Defendants therefore respectfully request that the Court proceed as quickly as possible, without discovery, to an appealable order.

Dated: January 28, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

AUGUST FLENTJE
Special Counsel

BRIGHAM J. BOWEN
Assistant Branch Director

_/s/ Adam D. Kirschner_
ADAM D. KIRSCHNER
Attorney-in-charge
IL Bar. No. 6286601
Senior Trial Counsel
BRIAN C. ROSEN-SHAUD
ME Bar No. 006018
MICHAEL F. KNAPP
CA Bar No. 314104
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
Tel: (202) 353-9265
Fax: (202) 616-8460
Email: Adam.Kirschner@usdoj.gov
        Brian.C.Rosen-Shaud@usdoj.gov
        Michael.F.Knapp@usdoj.gov

Mailing Address:

Post Office Box 883
Washington, D.C. 20044

<u>Courier Address</u>
1100 L Street NW, Room 11020
Washington, D.C. 20005
*Attorneys for Defendants*


DANIEL DAVID HU
Assistant United States Attorney
Chief, Civil Division
State Bar No. 10131415
S.D. I.D. 7959
Southern District of Texas
1000 Louisiana, Suite 2300 Houston, TX 77002
Tel: (713) 567-9000
Fax: (713) 718-3300
Daniel.Hu@usdoj.gov
*Local Counsel*

## CERTIFICATE OF WORD COUNT

Undersigned counsel certifies that the total number of words in Defendants' statement, exclusive of those sections designated for omission, is 3,458 words, as registered by Microsoft Word.

_/s/ Adam D. Kirschner_
ADAM D. KIRSCHNER

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on January 28, 2021.

/s/ *Adam D. Kirschner*
ADAM D. KIRSCHNER