# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# VICTORIA DIVISION

| | |
|---|---|
| STATE OF TEXAS,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>*Defendants*. | Civ. Action No. 6:20-cv-00003 |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
MOTION TO INTERVENE OF FIEL HOUSTON AND RAICES**

FIEL Houston and Refugee and Immigrant Center for Education and Legal Services ("RAICES") (collectively, the "Proposed Intervenors") do not qualify for intervention as a matter of right under Rule 24(a). They cannot overcome the presumption that the Federal Defendants will adequately represent their interests, given that: (1) a government body is representing their interests by defending a governmental policy; and (2) the Federal Defendants share the precisely same ultimate objective as the Proposed Intervenors.

Nor should Proposed Intervenors be granted permissive intervention under Rule 24(b). At the outset, the existence of parties that adequately represent Proposed Intervenors' interests—the Federal Defendants—undercuts their permissive-intervention request. Beyond that, Proposed Intervenors bring no new issues to the case, and their interests can be appropriately served with an *amicus* brief.

**I.    Proposed Intervenors Ars Not Entitled to Intervene as a Matter of Right.**

A party seeking to intervene as of right must satisfy four requirements. *See* Fed. R. Civ. P 24(a)(2). Dispositive here is the fourth requirement: "[T]he applicant's interest must be

1

inadequately represented by the existing parties to the suit." *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014) (citation and quotations omitted). "The burden of establishing inadequate representation is on the applicant for intervention." *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996) (en banc) (citation omitted).

Given the Federal Defendants' presence in this suit, Proposed Intervenors cannot satisfy this element. *See Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs*, 493 F.3d 570, 578–79 (5th Cir. 2007). Proposed Intervenors thus do not qualify for intervention under Rule 24(a).

A. **Adequacy of Representation is Presumed on Two Grounds.**

There are two presumptions of adequate representation that intervenors must overcome. The first presumption arises where "the would-be intervenor has the same ultimate objective as a party to the lawsuit." *Texas v. United States*, 805 F.3d 653, 662-63 (5th Cir. 2015) (citation omitted). The second presumption arises "when the putative representative is a governmental body or officer charged by law with representing the interests of the [intervenor]." *Id*. Both presumptions apply here.

If the first presumption applies, "the applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption," and if the second presumption applies, the Proposed Intervenors must show "that [their] interest is in fact different from that of the [governmental entity] and that the interest will not be represented by [it]." *Texas*, 805 F.3d at 662 (citations and internal quotation marks omitted).

In their intervention request, Proposed Intervenors point to harms to them and their members if the January 20, 2021 Memorandum is enjoined or set aside.[1] But to establish a right

---

[1] *See, e.g.*, ECF No. 28 at 1 ("The injunction that Texas seeks will place noncitizens around the country at risk of deportation, even though many of them have paths to regularize their immigration status, claim humanitarian protection, or seek long-term grants of prosecutorial discretion in their favor."); *id.* at 7 ("Many of [FIEL Houston's] members have final orders of removal and would be exposed to the risk of

to intervene, Proposed Intervenors must do more than identify a purported harm to their interests that would be inflicted by the remedies sought in this suit. They bear the burden to demonstrate "that the representation of [their] interest [by the existing parties] may be inadequate." *Texas*, 805 F.3d at 661 (citations and quotations omitted).[2] The proper inquiry focuses not on whether there is any variation in the interests of Proposed Intervenors compared to the Federal Defendants, but on whether the same outcome would serve those alleged interests. Adequate representation is presumed when "the would-be intervenor has the same ultimate objective as a party to the lawsuit." *Brumfield*, 749 F.3d at 345 (citation and quotations omitted). To overcome this presumption, the Proposed Intervenors must show "adversity of interest, collusion, or nonfeasance" by the existing party. *Texas*, 805 F.3d at 661–62 (citation and quotations omitted).

Proposed Intervenors do not allege they have a different "ultimate objective" than the Federal Defendants. Nor could they plausibly do so, as Proposed Intervenors share the same overarching goal as the Federal Defendants: defending the legality of the January 20, 2021 Memorandum directing a 100-day moratorium on removals. At most, Proposed Intervenors

---

deportation and other enforcement actions—and an immediate impact on their mental and psychological well-being—if the DHS Memo is enjoined.."); *id.* at 7-8 ("RAICES has clients who are at risk of removal and other enforcement actions if the DHS Memo is enjoined."); *id.* at 9 ("[Proposed Intervenors'] members and clients are individuals who are covered by and benefit from the DHS Memo. For those clients and members, the injunction Texas seeks means risk of deportation, arrest, and other enforcement actions, and the emotional and psychological toll that risk and uncertainty will cause for them."); *id.* at 12 ("Under the DHS Memo, [the Proposed Intervenors'] members and clients will, for example, be at least temporarily safe from deportation. The organizations themselves will be able to direct their resources to affirmative efforts to secure durable long-term status for their members and clients and to other organizational initiatives. Texas is seeking to enjoin that Memo. Thus, the order Texas seeks clearly may impair Proposed Intervenors' ability to protect their interests.").

[2] To be sure, the Fifth Circuit has held that a proposed intervenor's burden to show inadequate representation is "minimal." *Edwards*, 78 F.3d at 1005. But it also has emphasized that this burden "cannot be treated as so minimal as to write the requirement completely out of the rule." *Texas*, 805 F.3d at 661 (citations and quotations omitted); *accord Veasey v. Perry*, 577 F. App'x 261, 263 (5th Cir. 2014) (per curiam) (affirming denial of motion to intervene, reasoning that the inadequate-representation requirement "must have some teeth").

indicate they will suffer a different *type* of harm than the Federal Defendants if the Plaintiff State of Texas prevails. But this misses the mark: it is the shared desire in the *outcome* of the litigation that creates a presumption of adequacy. *See, e.g.*, *Doe v. Duncanville Indep. Sch. Dist.*, 994 F.2d 160, 168 (5th Cir. 1993) (affirming denial of motion to intervene by class of schoolchildren who sought "the same outcome" as defendant school district); *Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 281 (5th Cir. 1996) (noting that the relevant issue was the validity of school-prayer law and "the Attorney General, in defending that statute, can assert the rights of all Mississippians affected by the law," including the proposed intervenors). Because Proposed Intervenors and the Federal Defendants share the same ultimate objective, it is presumed that the Federal Defendants will adequately represent Proposed Intervenors' interests in this suit.

**B.    Proposed Intervenors cannot overcome the presumptions that Federal Defendants adequately represent their interests.**

The second presumption also applies here, as the Federal Defendants are the quintessential governmental entities proper for defending the interests of a federal policy.

The Proposed Intervenors have not demonstrated any "adversity of interest, collusion, or nonfeasance on the part of" Federal Defendants to overcome the presumption arising due to their ultimate objective–defending the January 21, 2020 memorandum–is the same as that of the Federal Defendants. *Texas*, 805 F.3d at 661–62.

Proposed Intervenors assert that the Federal Defendants may not "fully represent" their interests because "as government entities and officials, they must represent the broad public interest." ECF No. 28 at 12 (citations and internal quotation marks omitted). But the Fifth Circuit has indicated that to establish adversity of interest, a putative intervenor must assert more than an abstract claim of a broader public interest. *See, e.g., Texas*, 805 F.3d at 663 (citing *Daggett v. Comm'n on Governmental Ethics & Election Practices*, 172 F.3d 104, 112 (1st Cir. 1999), for the

proposition that "[t]he general notion that the [government] represents 'broader' interests at some abstract level is not enough" under Rule 24(a)). Proposed Intervenors here rely on their interest in having individuals not being removed from the country for various humanitarian reasons but cannot show that those interests are in any way adverse to those of Federal Defendants. Indeed, the Federal Defendants have explicitly asserted those same interests in opposing Plaintiff's TRO motion:

> Texas insists that DHS resume removals, meaning individuals not before the Court would be removed from this country before the new Administration assesses whether such removal is consistent with its immigration priorities. The Supreme Court has recognized the humanitarian component of immigration enforcement, and the government should be able to make this assessment before executing removal orders. Imposing a requirement to carry out removals without regard to this assessment squarely contradicts the immigration system whereby the political branches are charged with exercising this authority.

ECF No. 8 at 14.

Proposed Intervenors' motion is distinguishable from the Jane Does' request in the DAPA litigation. There, prospective DAPA recipients sought to intervene in defense of the challenged deferred-action program. *Texas*, 805 F.3d at 655. The Fifth Circuit allowed the intervention, holding that the Jane Does rebutted any presumption that the federal government adequately represented their interests. *Id.* at 661–63. The Jane Does did so by showing adversity of interest— *i.e.*, that their "interests diverge[d] from the putative representative's interests in a manner germane to the case." *Id.* at 662. The Fifth Circuit pointed to the federal government's position "that the States may refuse to issue driver's licenses to deferred action recipients." *Id.* at 663. This position was "directly adverse to the Jane Does, who are eligible for deferred action." *Id.* And the disagreement "ar[ose] directly from their divergent interests"—namely, the federal government "has an institutional interest in shielding its actions from state intervention through the courts,

5

whereas the Jane Does' interest is in working and providing for their families, for which a driver's license is beneficial." *Id.*; *see also Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 569 (5th Cir. 2016) (private association seeking to intervene as defendant did not intend to defend all challenged statutory provisions, whereas the state agency did); *Entergy Gulf States La., L.L.C. v. EPA*, 817 F.3d 198, 204–05 (5th Cir. 2016) (parties' divergent approach on issues germane to the case—whether to stay or bifurcate the proceeding—warranted intervention); *Brumfield*, 749 F.3d at 346 ("[T]he parents are staking out a position significantly different from that of the state, which apparently has conceded the continuing jurisdiction of the district court.").

Proposed Intervenors attempt to squeeze themselves into this method of overcoming the presumption of adequate representation in two ways: first, by speculating with no evidence that the Federal Defendants will find themselves unable to argue against a limit on their authority relating to entering agreements such as the one the Department of Homeland Security (DHS) entered into with the State of Texas, ECF No. 28 at 13, and second, that the Federal Defendants will be "less likely to vigorously press arguments" based on harms of deportation to removable aliens. *Id*. at 13-14.

As to the first, the Federal Defendants adamantly argue the agreement as invalid and unenforceable on several grounds. ECF No. 8 at 3-6. Proposed Intervenors' arguments on this front are therefore without any basis and fail to demonstrate any likelihood they would take any positions adverse to the Federal Defendants, much less that their interests may diverge "in a manner germane to the case." *Texas*, 805 F.3d at 662–63; *Entergy Gulf States La.,* 817 F.3d at 204–05. Nor have Proposed Intervenors indicated that the Federal Defendants will defend only certain portions of the challenged January 20, 2021 Memorandum. *See Wal-Mart Stores,* 834 F.3d at 569.

And the second attempt—the claim that Proposed Intervenors will more intensely push certain arguments—is a mere disagreement over strategy insufficient to overcome the presumption of adequacy. *In Hopwood v. Texas*, 21 F.3d 603 (5th Cir. 1994), the Fifth Circuit faced an attempt to overcome the presumption of adequacy where the intervenors argued, at a high level of generality, that "the State's interests are broader" than the intervenors' interests because "the State must balance competing goals while [the intervenors] are sharply focused on preserving the admissions policy." *Id*. at 605. The Court rejected this because "[t]he proposed intervenors have not demonstrated that the State will not strongly defend its affirmative action program. Nor have the proposed intervenors shown that they have a separate defense of the affirmative action plan that the State has failed to assert." *Id*. at 606. Proposed Intervenors here have not otherwise shown that their defense of the January 20, 2021 Memorandum would be "significantly different" on the substance than that of the Federal Defendants in any meaningful way. *See Brumfield,* 749 F.3d at 346. Any speculation as to future contingencies is not sufficient to overcome the presumption of adequate representation.

Proposed Intervenors have not rebutted the presumptions that the Federal Defendants will adequately represent their interests in this suit; they are therefore not entitled to intervene as a matter of right.

## II. Proposed Intervenors Should Not Be Granted Permissive Intervention.

So too for Proposed Intervenors' request for permissive intervention. ECF No. 28 at 14-16. Permissive intervention is "wholly discretionary" and can be denied even if there is a common question of law or fact. *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 470–71 (5th Cir. 1984) (en banc) ("*NOPSI*"). Rule 24(b) provides that courts "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties'

rights." Fed. R. Civ. P. 24(b)(3). And, in exercising their discretion, district courts can take into account whether the proposed intervenor will "significantly contribute to full development of the underlying factual issues in the suit." *NOPSI,* 732 F.2d at 472 (citations and quotations omitted).

District court decisions on Rule 24(b) motions receive an "exceedingly deferential" standard of review. *Ingebretsen*, 88 F.3d at 281. Absent a "clear abuse of discretion," the district court's ruling will stand. *Cajun Elec. Power Coop., Inc. v. Gulf States Utils., Inc.*, 940 F.2d 117, 121 (5th Cir. 1991). Reflecting this deferential standard, the Fifth Circuit has "never reversed a denial of permissive intervention." *Ingebretsen*, 88 F.3d at 281 (citation and quotations omitted).[3] At the same time, it has repeatedly affirmed the denial of a permissive-intervention request. *See, e.g., Staley v. Harris Cnty., Tex.*, 160 F. App'x 410, 414 (5th Cir. 2005) (per curiam); *Pruett v. Harris Cnty. Bail Bond Bd.*, 104 F. App'x 995, 997 (5th Cir. 2004) (per curiam).

Proposed Intervenors are not entitled to permissive intervention. As discussed earlier, they cannot rebut the presumption of adequate representation. That alone justifies denying their request as unnecessary and needlessly complicating the litigation. *See, e.g., Staley*, 160 F. App'x at 414 (denial of permissive intervention was proper where another party "adequately represents [intervenor's] interests in this case"); *United States v. Tex. E. Transmission Corp.*, 923 F.2d 410, 416 (5th Cir. 1991) (same).

What is more, Proposed Intervenors would add nothing to this case except undue burden on the other parties and potential delay. If Proposed Intervenors are permitted to intervene, Plaintiff State of Texas will be forced to spend time and resources addressing Proposed Intervenors' contentions through briefing and discovery. For all that, Proposed Intervenors bring no new issues to the litigation. *See Ingebretsen*, 88 F.3d at 281 (finding that district court did not err in denying

---

[3] Plaintiff is aware of no Fifth Circuit case after *Ingebretsen* reversing a district court's denial of a Rule 24(b) motion.

permissive intervention that brought no new issues and would have achieved no purpose aside from delay); *United States v. S. Fla. Water Mgmt. Dist.*, 922 F.2d 704, 711–12 (11th Cir. 1991) (affirming denial of permissive intervention that would have increased the number of witnesses and collateral issues).

In these circumstances, the Fifth Circuit recognized the proper role for such proposed intervenors:

> Additional parties always take additional time. Even if they have no witnesses of their own, they are the source of additional questions, briefs, arguments, motions and the like which tend to make the proceeding a Donnybrook Fair. Where he presents no new questions, a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention.

*Bush v. Viterna*, 740 F.2d 350, 359 (5th Cir. 1984) (per curiam) (citation and quotations omitted) (affirming denial of county association's motion for permissive intervention as defendant in statewide challenge to county-jail conditions). That is precisely the situation that Proposed Intervenors' request presents here. Plaintiff State of Texas has no objection to Proposed Intervenors' participation as *amicus curiae*. *See id.*; *NOPSI*, 732 F.2d at 473. But intervention is unwarranted.

## **CONCLUSION**

Proposed Intervenors have not shown the adversity of interest, collusion, or nonfeasance, or differing ultimate objectives, needed to overcome the presumptions of adequate representation by the existing Federal Defendants in this case. Their presence at this point would only needlessly complicate the litigation and add nothing of any substance. Texas respectfully requests that the Motion for Intervention be denied.

Respectfully submitted this the 3rd day of February, 2021,

        KEN PAXTON
        Attorney General of Texas

        BRENT WEBSTER
        First Assistant Attorney General

        PATRICK K. SWEETEN
        Associate Deputy Attorney General for
        Special Litigation

        */s/ Todd Lawrence Disher*
        TODD LAWRENCE DISHER
        Deputy Chief, Special Litigation Unit
        *Attorney-in-Charge*
        Texas Bar No. 24081854
        Southern District of Texas Bar No. 2985472

        WILLIAM T. THOMPSON
        Special Counsel
        Special Litigation Unit
        Texas Bar No. 24088531
        Southern District of Texas Bar No. 3053077

        RYAN D. WALTERS
        Special Counsel
        Texas Bar No. 24105085
        Southern District of Texas Bar No. 3369185

        Special Litigation Unit
        P.O. Box 12548
        Austin, Texas 78711-2548
        Phone: (512) 936-1414
        Fax: (512) 936-0545
        Patrick.Sweeten@oag.texas.gov
        Todd.Disher@oag.texas.gov
        Will.Thompson@oag.texas.gov
        Ryan.Walters@oag.texas.gov

        *Counsel for the State of Texas*

## Certificate of Word Count

I hereby certify that the total number of words in Plaintiff's Response in Opposition to Motion to Intervene of FIEL Houston and RAICES, exclusive of those sections designated for omission, is 2,833 words, as registered by Microsoft Word.

## Certificate of Service

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on February 3, 2021.

*/s/ Todd Lawrence Disher*
Todd Lawrence Disher