UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| **STATE OF TEXAS,** § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | Civil Action No. 6:21-cv-00003 |
| § | | |
| The **UNITED STATES OF AMERICA;** § | | |
| **DAVID PEKOSKE,** Acting Secretary of § | | |
| The United States Department of Homeland § | | |
| Security, in his official capacity; § | | |
| **UNITED STATES DEPARTMENT OF** § | | |
| **HOMELAND SECURITY; TROY** § | | |
| **MILLER,** Senior Official Performing the § | | |
| Duties of the Commissioner of U.S. Customs § | | |
| and Border Protection, in his official § | | |
| capacity; **U.S. CUSTOMS AND BORDER** § | | |
| **PROTECTION; TAE JOHNSON,** Acting § | | |
| Director of U.S. Immigration and § | | |
| Customs Enforcement, in his official § | | |
| capacity; **U.S. IMMIGRATION AND** § | | |
| **CUSTOMS ENFORCEMENT; TRACY** § | | |
| **RENAUD,** Senior Official Performing the § | | |
| Duties of the Director of the U.S. Citizenship § | | |
| And Immigration Services, in her official § | | |
| capacity; and **U.S. CITIZENSHIP** § | | |
| **AND IMMIGRATION SERVICES,** § | | |
| § | | |
| Defendants. § | | |

# ORDER

FIEL Houston and the Refugee and Immigrant Center for Education and Legal Services (the "Proposed Intervenors") have filed an Emergency Motion to Intervene as defendants in this case under Rule 24 of the Federal Rules of Civil Procedure. (Dkt. No. 28). The Proposed Intervenors contend they have a right to intervene pursuant to Rule 24(a) or, in the alternative, they request that the Court permit them to intervene pursuant to Rule 24(b). (*Id.*). The State of Texas opposes the Emergency Motion. (Dkt. No. 57). Having considered the Emergency Motion,

Texas's Response, the record, and the applicable law, the Court **GRANTS** the Proposed Intervenors' Emergency Motion pursuant to Rule 24(b) of the Federal Rules of Civil Procedure.[1]

## I. BACKGROUND

The State of Texas requested a Temporary Restraining Order ("TRO") to enjoin the Defendants from executing an immediate 100-day pause on the removal of "any noncitizen with a final order of removal." (Dkt. No. 2). The 100-day pause was implemented through a Department of Homeland Security Memorandum dated January 20, 2021 (the "January 20 Memorandum"). (Dkt. No. 2-2). On January 26, 2021, the Court granted Texas's request and issued a TRO temporarily enjoining the 100-day pause. (Dkt. No. 16). Two days later, the Proposed Intervenors filed their Emergency Motion. (Dkt. No. 28). The Proposed Intervenors subsequently participated in a status conference with the Court on January 29, 2021. (*See* Dkt. No. 52). The Court entered a Scheduling Order that, among other things, provided the Parties an opportunity to respond to the Proposed Intervenors' Emergency Motion by February 3, 2021. (Dkt. No. 44). Texas filed its Response in opposition to the Emergency Motion on that date. (Dkt. No. 57). The Defendants did not file a response to the Proposed Intervenors' Emergency Motion. With briefing now complete, the Court turns to the merits of the Emergency Motion.

## II. RULE 24(B) LEGAL STANDARD

Rule 24(b) of the Federal Rules of Civil Procedure allows a district court to permit a party to intervene. FED. R. CIV. P. 24(b).[2] The Fifth Circuit has explained that permissive intervention

---

[1] Because the Court has granted permissive intervention, the Court foregoes discussion on whether the Proposed Intervenors have a right to intervene as provided in Rule 24(a) of the Federal Rules of Civil Procedure.

[2] In relevant part, the rule provides: "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1)(B). Rule 24(b) further requires a district court, when exercising its discretion, to "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3).

under Rule 24(b) is appropriate when "(1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 884 F.2d 185, 189 n.2 (5th Cir. 1989).  The Fifth Circuit has additionally instructed courts to consider whether the proposed intervenor is (4) adequately represented by the existing parties and (5) whether the intervenor's presence is likely to provide significant contributions to the development of the underlying factual issues.  *Id.* at 189.  Overall, "[p]ermissive intervention is wholly discretionary with the district court," and even if the court finds that there is a common question of law or fact or that the Rule 24(b) requirements are otherwise satisfied, the court may ultimately deny permission to intervene.[3]  *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 470–71 (5th Cir. 1984) (quotations omitted).  To guide a court's discretion, the Fifth Circuit has noted that intervention should be permitted "where no one would be hurt and greater justice could be attained." *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994).

In general, Rule 24 represents "an accommodation between two potentially conflicting goals: to achieve judicial economies of scale by resolving related issues in a single lawsuit, and to prevent the single lawsuit from becoming fruitlessly complex or unending." *United States v. Tex. E. Transmission Corp.*, 923 F.2d 410, 412 (5th Cir. 1991) (quoting *Smuck v. Hobson*, 408 F.2d 175, 179 (D.C. Cir. 1969) (*en banc*)).  Parties may nevertheless seek intervention "in a wide variety of situations involving unique facts and procedural postures." *Id.*  The Fifth Circuit therefore

---

[3] Although a district court has wide discretion to decide whether to grant intervention, the Fifth Circuit has held that the decision to permit intervention under Rule 24(b) requires a "threshold determination" of whether the proposed intervenor's claims or defenses have a common question of law and fact with the main action, the second factor the Fifth Circuit described in *Clements*. *Howse v. S/V Canada Goose I*, 641 F.2d 317, 322–23 (5th Cir. 1981).  Such a determination is a question of law. *Stallworth v. Monsanto Co.*, 558 F.2d 257, 269 (5th Cir. 1977).  It is *not* discretionary.  *Id.*

cautions that "the facts and procedural posture of each case are important, and it is often true that 'general rules and past decisions cannot provide uniformly dependable guides.'" *Id.* (quoting *Smuck*, 408 F.2d at 179).

## III.   ANALYSIS

After considering the permissive intervention factors the Fifth Circuit enumerated in *Clements* and *Sierra Club*, as well as the arguments both the Proposed Intervenors and Texas pose in support of their respective positions, the Court finds it is appropriate to grant the Proposed Intervenors' request.

### A.   THE APPLICATION IS TIMELY

First, the Court is persuaded that the Proposed Intervenors' Emergency Motion is timely. "[T]he question whether an application for intervention is timely is largely committed to the discretion of the district court . . . ." *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263 (5th Cir. 1977). Timeliness, however, is evaluated "more leniently" under intervention as of right than under permissive intervention. *Rotstain v. Mendez*, No. 19-11131, 2021 WL 359989, at *8 (5th Cir. Feb. 3, 2021). Regardless, the Fifth Circuit notes that "[t]he requirement of timeliness is not a tool of retribution to punish the tardy would-be intervener, but rather a guard against prejudicing the original parties by the failure to apply sooner." *John Doe No. 1 v. Glickman*, 256 F.3d 371, 375 (5th Cir. 2001) (quotation omitted). Timeliness is contextual and must be determined based on all the circumstances. *Id.*

Here, the Proposed Intervenors moved to intervene six days after Texas filed the Complaint against the Defendants and eight days after the January 20 Memorandum was issued. (Dkt. Nos. 1, 28). Neither Texas nor the Defendants had submitted any briefing related to a preliminary injunction when the Proposed Intervenors filed their Emergency Motion. In its Response, Texas does not argue that the Intervenors' application is untimely, and the Court does not see why or

4

how such an application would be considered "late" or untimely. Thus, the Court finds that the Emergency Motion is timely for the purposes of permissive intervention.

### B. THE PROPOSED INTERVENORS HAVE ARTICULATED A COMMON QUESTION OF LAW AND FACT

Second, the Court finds the Proposed Intervenors have asserted defenses that share a common question of law and fact with the main action. "[T]he 'claim or defense' portion of [the] Rule . . . has been construed liberally." *Newby v. Enron Corp.*, 443 F.3d 416, 422 (5th Cir. 2006); *see also In re Estelle,* 516 F.2d 480, 485 (5th Cir. 1975) ("[T]he Supreme Court has said that it 'plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation.'") (citing *S.E.C. v. U.S. Realty & Imp. Co.*, 310 U.S. 434, 459, 60 S.Ct. 1044, 1055, 84 L.Ed.1293 (1940)). Notwithstanding, there is no common question of law or fact if the claims in the suit are "not related to" the proposed intervenor's arguments. *See Trans Chem. Ltd. v. China Nat. Mach. Imp. & Exp. Corp.*, 332 F.3d 815, 824–25 (5th Cir. 2003).

That is not the case here, as Texas's claims are clearly related to the Proposed Intervenors' arguments. Both the Proposed Intervenors and the Defendants challenge the enforceability of an agreement between DHS and the State of Texas relating to certain immigration matters (the "Agreement"), and both challenge Texas's standing to bring the instant action, and both argue that DHS has broad discretion to institute the 100-day pause on removals. *See Symetra Life Ins. Co. v. Rapid Settlements Ltd.*, No. CIV.A. H-05-3167, 2006 WL 2382250, at *4 (S.D. Tex. Aug. 16, 2006) (finding commonality of claims between the proposed intervenors and the plaintiffs when both "claim that [defendant] is improperly circumventing the court-approval requirements of state transfer statutes."). Moreover, the Proposed Intervenors' defenses, the Defendants' defenses, and Texas's claims arise from the same set of facts and considerations: the January 20 Memorandum,

5

the Agreement, and DHS's longstanding practices with respect to the enforcement of immigration law, just to name a few. Courts in the Fifth Circuit regularly permit intervention under similar circumstances. *See, e.g.*, *Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 940 (N.D. Tex. 2019) (permitting intervention where proposed intervenors have a "defense that shares with the main action a common question of law or fact" because the "defense is directly related to the underlying controversy"); *EEOC v. Commercial Coating Serv., Inc.*, 220 F.R.D. 300, 302–03 (S.D. Tex. 2004) (permitting intervention where the proposed intervenor's claims "arise largely from the same set of facts" as those of the parties). Accordingly, the Court finds that the Proposed Intervenors have articulated defenses that have common questions of law and fact with the main action.

### C. NO UNDUE DELAY OR PREJUDICE

Third, the Court finds that intervention would not unduly delay or prejudice the Parties. Given that the matter is in its infancy, the Proposed Intervenors' request will not impose timing issues, difficulties, or constraints with regards to the briefing schedule for the preliminary injunction. *See Symetra*, 2006 WL 2382250, at *6 ("This case is at an early stage and intervention will neither delay the proceedings nor prejudice the existing parties."). Indeed, the Proposed Intervenors represented in their Emergency Motion that they would fully comply with the published briefing schedule, a representation that their counsel affirmed in the January 29, 2021 hearing.[4] (Dkt. No. 28 at 19; Dkt. No. 52 at 71–72).

Texas nevertheless raises concerns about the burden the intervention may pose in light of the Proposed Intervenors' potential discovery requests and arguments. Given the limitations on discovery agreed to by the Parties for the preliminary injunction phase, the Court finds Texas's

---

[4] At the January 29, 2021 hearing before the Court, counsel for the Proposed Intervenors indicated that "we're prepared to file on any schedule and as quickly as possible including even before the Court resolves the intervention question." (Dkt. No. 52 at 71).

discovery concerns unwarranted. The Court will benefit from the perspective and arguments the Proposed Intervenors bring to the Court. In short, obtaining a full record and briefing within this expedited framework is in the interest of justice. *See Sierra Club*, 18 F.3d at 1205 (intervention should be allowed "where no one would be hurt and greater justice could be attained"). Thus, the Court finds that this factor favors granting permissive intervention.

### D. THE PROPOSED INTERVENORS HAVE INTERESTS THE DEFENDANTS MAY NOT ADEQUATELY REPRESENT

Next, the Court must consider whether the interests of the Proposed Intervenors are adequately represented by the Defendants. *See Clements*, 884 F.2d at 189. The Fifth Circuit has outlined "two presumptions of adequate representation." *Texas*, 805 F.3d at 661 (internal quotation omitted). The first is when a proposed intervenor "has the same ultimate objective as a party to the lawsuit." *Id.* (internal quotation omitted). The second is when the other party to the lawsuit "is a governmental body or officer charged by law with representing the interests of the [intervenor]." *Id.* (alteration in original) (internal quotation omitted). A proposed intervenor may overcome both presumptions by showing, *inter alia*, an "adversity of interest" with the governmental entity. *Id.* at 661–62. That is, a proposed intervenor "must demonstrate that its interests diverge from the putative representative's interests in a manner germane to the case." *Id.* at 662. In so doing, the proposed intervenor must put forth "something more than speculation as to the purported inadequacy"; however, as a general matter it remains "a relatively minimal showing." *Clements*, 884 F.2d at 189 (internal quotation omitted).

In this instance, both presumptions apply. The Proposed Intervenors have the same ultimate goal as the Defendants—to allow implementation of the 100-day pause—and the Defendants are a governmental entity charged by law with representing, to some measure, the interests of the Proposed Intervenors. The Proposed Intervenors seek to overcome this by demonstrating that,

7

whereas the federal government the Defendants' primary argumentative tack will focus on its expansive executive authority, the Proposed Intervenors' arguments will focus on the effect of the 100-day pause on the *individuals* subject to a final order of removal.  (Dkt. No. 28 at 18–19).  Texas argues that the Proposed Intervenors' supposed adverse interest fails because the Defendants, in addition to asserting arguments based on executive authority, have expressed concern over certain "humanitarian" issues inherent in their enforcement of immigration laws.  (Dkt. No. 57 at 5; *see* Doc. 8 at 20).

The Court finds that the Proposed Intervenors' interests are sufficiently adverse from the Defendants in this case.  The Defendants' concern over the humanitarian impact of an injunction against the January 20 Memorandum is chiefly institutional and political.  The practical limits to such a concern are clearly demonstrated by the arguments Texas makes in its Motion for a Preliminary Injunction.  There, Texas explains the impact a 100-day pause would have because of the increase in the number of individuals that may ultimately be released who have committed a crime and are subject to a final order of removal.  (Dkt. No. 62 at 10–11).  The Defendants, as entities charged by law with protecting Texas citizens, will by necessity balance their advocacy for individuals subject to a final order of removal on humanitarian grounds with its lawful duty to protect American citizens.  By contrast, the Proposed Intervenors are unimpeded by any duty to protect American citizens, and thus are concerned exclusively with the welfare of individuals directly affected by the January 20 Memorandum.  The Proposed Intervenors have therefore met their minimal burden to show their interests are sufficiently adverse to the Defendants' in a way that is germane to the case—despite the fact that they share the common goal of opposing Texas's lawsuit.

The Court's finding on this issue is in no way novel: the Fifth Circuit has historically acknowledged the significance of a distinction between institutional and individual representation in the context of Rule 24 intervention. *See Texas*, 805 F.3d at 663 (listing cases). Given the Proposed Intervenors' representation of individuals subject to final orders of removal, the Court finds that the Defendants' institutional representation is inadequate.

### E.  THE PROPOSED INTERVENORS WILL CONTRIBUTE TO THE COURT'S DISCERNMENT OF THE UNDERLYING ISSUES

Finally, the Court concludes the Proposed Intervenors will significantly contribute to the Court's discernment of the underlying issues. For one, as alluded to above, the Proposed Intervenors bring a wealth of experience in observing the direct impact of immigration regulations on individuals as opposed to political entities. The Proposed Intervenors' members and clients *are* the individuals subject to final orders of removal. The Court therefore welcomes the Proposed Intervenors' expertise in the removal process and, as they state, "the practical and legal realities of the immigration system." (Dkt. No. 28 at 20). Indeed, during the January 29, 2021 status conference, the Proposed Intervenors provided comprehensive and detailed answers to the Court's questions regarding immigration procedures in the context of removals. (*See* Dkt. No. 52 at 59–67). The Court therefore finds that the Proposed Intervenors would provide an important perspective and substantial expertise and experience that will aid the Court in its consideration of Texas's request for a preliminary injunction.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Proposed Intervenors' Emergency Motion. Accordingly, the Proposed Intervenors are **ORDERED** to adhere to the briefing schedule and discovery limitations outlined in the Court's Scheduling Order, (Dkt. No. 44), and to file their briefs and responses on the same dates the Defendants are required to do so.

It is SO ORDERED.

SIGNED this February 6, 2021.

                                                    **DREW B. TIPTON**
                                        **UNITED STATES DISTRICT JUDGE**