**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS,**
**VICTORIA DIVISION**

|  |  |  |
|---|---|---|
| STATE OF TEXAS, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 6:21-cv-0003-DBT |
| UNITED STATES OF AMERICA, *et al.*, | ) | |
| Defendants, | ) | |
| FIEL Houston, *et al.*, | ) | |
| Defendants-Intervenors. | ) | |

**MEMORANDUM OF LAW OF IMMIGRATION REFORM LAW INSTITUTE AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

Christopher J. Hajec
Immigration Reform Law Institute
25 Massachusetts Avenue, NW, Suite 335
Washington, DC 20001
Tel: 202-232-5590
Fax: 202-464-3590
Email: chajec@irli.org

Lawrence J. Joseph
 Counsel of Record
D.C. Bar No. 464777 (admitted *pro hac vice*)
1250 Connecticut Av NW, Ste 700-1A
Washington, DC 20036
Tel: 202-669-5135
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

*Counsel for Amicus Curiae*

## <u>TABLE OF CONTENTS</u>

Table of Authorities ................................................................................................ ii

Introduction........................................................................................................... 1

Standard of Review ................................................................................................ 1

I.   Texas has standing to sue. ............................................................................. 2

    A.   This Court must assume Texas's merits views to evaluate standing................. 2

    B.   The Memorandum causes Texas economic injury that the Court can redress. ................ 3

    C.   Because Texas alleges procedural injuries, the Article III thresholds for immediacy and redressability are easily met. ................................................ 3

II.  The Memorandum is reviewable. .................................................................... 4

    A.   The APA does not preclude review. ...................................................... 5

    B.   The *Ex parte Young* officer-suit exception to sovereign immunity would allow review, even of the APA did not. ................................................ 6

    C.   The INA does not preclude review........................................................ 7

III. Texas is likely to prevail on the merits. .......................................................... 8

    A.   The Memorandum is substantively invalid. ............................................. 8

        1.   Defendants are not entitled to deference. ....................................... 8

        2.   Pausing removals across the board for 100 days violates the INA. .......... 10

    B.   The Memorandum's promulgation violated the APA's procedural requirements. ............................................................................... 13

    C.   The Memorandum is arbitrary and capricious........................................... 14

    D.   The Memorandum violates the Take Care Clause. .................................... 15

IV.  The remaining *Winter* factors favor a preliminary injunction. .............................. 16

    A.   Texas is likely to suffer irreparable harm in the absence of preliminary relief............. 16

    B.   The balance of equities tips in Texas's favor. .......................................... 16

    C.   An injunction is in the public interest..................................................... 17

Conclusion .......................................................................................................... 18

## TABLE OF AUTHORITIES

## CASES

*Abbott Laboratories v. Gardner,* 387 U.S. 136 (1967)..................................................................4

*Adams v. Richardson*, 480 F.2d 1159 (D.C. Cir. 1973) (*en banc*)..............................................5

*Alexander v. Cockrell*, 294 F.3d 626 (5th Cir. 2002).................................................................17

*Alexander v. Sandoval*, 532 U.S. 275 (2001).............................................................................17

*Am. Sch. of Magnetic Healing v. McAnnulty,* 187 U.S. 94 (1902) ...........................................7

*Anderson v. Davila*, 125 F.3d 148 (3d Cir. 1997)......................................................................16

*Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013)..........................................13

*Ass'n of Data Processing Serv. Org., Inc. v. Camp*, 397 U.S. 150 (1970)...................................2

*Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897 (5th Cir. 1983) ............................13

*Bennett v. Spear*, 520 U.S. 154 (1997) .......................................................................................6

*Cate v. Oldham*, 707 F.2d 1176 (11th Cir. 1983) ......................................................................16

*Chevron U.S.A., Inc. v. N.R.D.C.,* 467 U.S. 837 (1984) ...........................................................8-9

*City of Los Angeles v. Adams*, 556 F.2d 40 (D.C. Cir. 1977) .....................................................11

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983).......................................................................2

*Corley v. United States*, 556 U.S. 303 (2009).............................................................................3

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)................................................................3

*Dart v. U.S.,* 848 F.2d 217 (D.C. Cir. 1988)...............................................................................7

*Diamond v. Charles,* 476 U.S. 54 (1986) ..............................................................................16-17

*Dickinson v. Zurko,* 527 U.S. 150 (1999) ...................................................................................6

*Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59 (1978) ................................3

*Elrod v. Burns*, 427 U.S. 347 (1976) ........................................................................................16

*Ex parte Young*, 209 U.S. 123 (1908) .........................................................................................6

*FEC v. Akins*, 524 U.S. 111998)..................................................................................................4

*FTC v. Morton Salt Co.*, 334 U.S. 37 (1948).............................................................................14

*General Elec. Co. v. EPA*, 290 F.3d 377 (D.C. Cir. 2002).........................................................14

*Golden Gate Rest. Ass'n v. City & County of San Francisco*, 512 F.3d 1112 (9th Cir. 2008)......17

*Gonzales v. Oregon,*546 U.S. 243 (2006)....................................................................................9

*Harmon v. Brucker,* 355 U.S. 579 (1958)....................................................................................7

*Heckler v. Chaney*, 470 U.S. 821 (1985) ....................................................................................5

*Home Box Office, Inc. v. FCC*, 567 F.2d 9 (D.C. Cir. 1977)......................................................10

*In re Campbell*, 750 F.3d 523 (5th Cir. 2014) ...........................................................................17

*Initiative & Referendum Institute v. Walker,* 450 F.3d 1082 (10th Cir. 2006) ...............................2

*INS v. Chadha,* 462 U.S. 919 (1983) ......................................................................................14

*Int'l Union v. Brock,* 477 U.S. 274 (1986)............................................................................ 5-6

*Kowalski v. Tesmer,* 543 U.S. 125 (2004) ...............................................................................2

*La Union Del Pueblo Entero v. FEMA,* 141 F. Supp. 3d 681 (S.D. Tex. 2015) ...........................10

*Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682 (1949)........................................6

*League of Women Voters of the United States v. Newby,* 838 F.3d 1 (D.C. Cir. 2016)................18

*LePage's 2000, Inc. v. Postal Regulatory Comm'n,* 642 F.3d 225 (D.C. Cir. 2011) ....................15

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) ............................................................ 2-3

*Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871 (1990) ............................................................... 5-6

*Mach Mining, LLC v. EEOC,* 575 U. S. 480 (2015)..................................................................4

*Manhattan Gen. Equip. Co. v. Commissioner,* 297 U.S. 129 (1936) ..........................................8

*Massachusetts v. EPA,* 549 U.S 497 (2007) ...........................................................................11

*McConnell v. FEC,* 540 U.S. 93 (2003)..................................................................................2

*McLouth Steel Products Corp. v. Thomas,* 838 F.2d 1317 (D.C. Cir. 1988)................................13

*Medina Cty. Envtl. Action Ass'n v. Surface Transp. Bd.,* 602 F.3d 687 (5th Cir. 2010)................9

*Mistretta v. United States,* 488 U.S. 361 (1989) .....................................................................13

*Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139 (2010).....................................................17

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29 (1983)........................9

*North Am. Coal Corp. v. Director, Office of Workers' Compensation Programs, U.S. Dep't of Labor,* 854 F.2d 386 (10th Cir. 1988)..............................................................................13

*Salinas v. United States Railroad Retirement Bd.,* No. 19-199, 2021 U.S. LEXIS 753 (Feb. 3, 2021) ...................................................................................................................4

*SEC v. Chenery Corp.,* 318 U.S. 80 (1943) .............................................................................9

*Siwe v. Holder,* 742 F.3d 603 (5th Cir. 2014) .........................................................................8

*Skidmore v. Swift & Co.,* 323 U.S. 134 (1944) ..................................................................... 8-9

*Southern Cal. Edison Co. v. F.E.R.C.,* 502 F.3d 176 (D.C. Cir. 2007) ........................................2

*State of Ohio Dep't of Human Serv. v. U.S. Dept. of Health & Human Serv., Health Care Financing Admin.,* 862 F.2d 1228 (6th Cir. 1988)................................................................13

*Succar v. Ashcroft,* 394 F.3d 8 (1st Cir. 2005) .......................................................................11

*Sugar Cane Growers Co-op. of Fla. v. Veneman,* 289 F.3d 89 (D.C. Cir. 2002)............................4

*Sunbeam Prods., Inc. v. West Bend Co.,* 123 F.3d 246 (5th Cir. 1997)........................................17

*Taylor v. Resolution Trust Corp.,* 56 F.3d 1497 (D.C. Cir. 1995)................................................17

*Texas Sav. & Cmty. Bankers Ass'n v. Fed. Hous. Fin. Bd.*, 201 F.3d 551 (5th Cir. 2001) ...........13

*Texas v. United States*, 809 F.3d 134 (5th Cir. 2015) ................................................................3, 13

*Texas v. United States*, 86 F. Supp. 3d 591 (S.D. Tex. 2015) ........................................................12

*Touche Ross & Co. v. Redington*, 442 U.S. 560 (1979) ................................................................17

*Tyler v. Cuomo,* 236 F.3d 1124 (9th Cir. 2000)...............................................................................2

*United States v. Texas*, 136 S.Ct. 906 (2016) ..................................................................................3

*Warth v. Seldin,* 422 U.S. 490 (1975) ........................................................................................2, 17

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008)........................ 1, 8, 16-17

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) ...................................................15

*Zadvydas v. Davis*, 533 U.S. 678 (2001) .......................................................................................11

## <u>STATUTES</u>

U.S. CONST. art. II, §3.................................................................................................................1, 15

U.S. CONST. art. III ...................................................................................................................... 2-3

Administrative Procedure Act,
    5 U.S.C. §§551-706 ................................................................................................... *passim*

5 U.S.C. §553(b) ..............................................................................................................................16

5 U.S.C. §553(c) ..............................................................................................................................16

5 U.S.C. §559 ....................................................................................................................................6

5 U.S.C. §701(a)(1) ...........................................................................................................................7

5 U.S.C. §701(a)(2) ...........................................................................................................................5

5 U.S.C. §702 ....................................................................................................................................6

5 U.S.C. §703 ....................................................................................................................................8

5 U.S.C. §704 ....................................................................................................................................6

5 U.S.C. §706 ....................................................................................................................................

5 U.S.C. §706(2)(A) ........................................................................................................................14

5 U.S.C. §706(2)(B) ..........................................................................................................................8

5 U.S.C. §706(2)(C) ..........................................................................................................................8

5 U.S.C. §706(2)(D) ........................................................................................................................13

6 U.S.C. §202(5) ........................................................................................................................ 12-13

Immigration and Nationality Act,
    8 U.S.C. §§1101-1537 .............................................................................................. *passim*

8 U.S.C. §1103(a)(3) .................................................................................................................. 12-13

8 U.S.C. §1225(a)(1).......................................................................................................................10

8 U.S.C. §1225(a)(3)........................................................................................10

8 U.S.C. §1225(b)(2)(A).............................................................................. 10-11

8 U.S.C. §1228(a)(3)........................................................................................12

## RULES AND REGULATIONS

David P. Pekoske, Acting Secretary, Department of Homeland Security, *Review of and Interim Revision to Civil Immigration Enforcement and Removal Policies and Priorities* (Jan. 20, 2021)..................................................................... *passim*

Executive Order 13993, Revision of Civil Immigration Enforcement Policies and Priorities, 86 Fed. Reg. 7051 (Jan. 25, 2021) .........................................................................1

## LEGISLATIVE HISTORY

Administrative Procedure Act, Legislative History, 79th Cong., S.Doc. No. 248, 79th Cong., 2d Sess. (1946) ..............................................................................7

H.R. REP. NO. 104-725 (1996)........................................................................12

## OTHER AUTHORITIES

A.B.A. Section of Admin. Law & Regulatory Practice, *A Blackletter Statement of Federal Administrative Law,* 54 ADMIN. L. REV. 1 (2002)................................................7

EDWIN BORCHARD, DECLARATORY JUDGMENTS (1941) .................................................7

WILLIAM J. HUGHES, FEDERAL PRACTICE §25387 (1940 & Supp. 1945)......................7

Michael X. Marinelli, *INS Enforcement of the Immigration Reform and Control Act of 1986: Employer Sanctions During the Citation Period*, 37 CATH. U. L.R. 829 (1988)................12

## INTRODUCTION

On his first day in office, the President issued Executive Order 13993, entitled "Revision of Civil Immigration Enforcement Policies and Priorities," and published at 86 Fed. Reg. 7051 (Jan. 25, 2021), which the Department of Homeland Security ("DHS") implemented in a memorandum entitled "Review of and Interim Revision to Civil Immigration Enforcement and Removal Policies and Priorities" by DHS's Acting Secretary, David P. Pekoske, dated January 20, 2021 (hereinafter, the "Memorandum"). Among other things, the Memorandum "sets … a 100-day pause on certain removals to enable focusing the Department's resources where they are most needed." Memorandum at 1. The State of Texas sued the United States, Acting Secretary Pekoske, and various DHS offices and officers (collectively, the "federal defendants"), arguing that the "pause" in removals violates various provisions of not only the Immigration and Nationality Act, 8 U.S.C. §§1101-1537 ("INA"), and the Take Care Clause, U.S. CONST. art. II, §3, but also the Administrative Procedure Act, 5 U.S.C. §§551-706 ("APA"), and an agreement between DHS and Texas. After this Court granted a temporary restraining order ("TRO"), Texas moved for a preliminary injunction, and two immigrant-rights groups (collectively, the "defendants-intervenors") were granted leave to intervene as defendants. Executive Order 13993 and the Memorandum itself are the only two documents that DHS identified as the administrative record for the Memorandum's promulgation.

## STANDARD OF REVIEW

To justify a preliminary injunction, federal courts look to four factors:

> A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). In addition to these factors—or as part of the likelihood of succeeding on the merits—a court must also assure itself

of its jurisdiction. *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983).

I.     **TEXAS HAS STANDING TO SUE.**

To establish standing, a plaintiff must show that: (1) the challenged action constitutes an "injury in fact," (2) the injury is "arguably within the zone of interests to be protected or regulated" by the relevant statutory or constitutional provision, and (3) nothing otherwise precludes judicial review. *Ass'n of Data Processing Serv. Org., Inc. v. Camp*, 397 U.S. 150, 153 (1970). An "injury in fact" is (1) an actual or imminent invasion of a constitutionally cognizable interest, (2) which is causally connected to the challenged conduct, and (3) which likely will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-62 (1992). In addition, standing doctrine also includes prudential elements, including the need for those seeking to assert absent third parties' rights to have their own Article III standing and a close relationship with the absent third parties, whom a sufficient "hindrance" keeps from asserting their own rights. *Kowalski v. Tesmer*, 543 U.S. 125, 128-30 (2004).

A.     **This Court must assume Texas's merits views to evaluate standing.**

The standing analysis assumes the plaintiff's merits views. *Warth v. Seldin,* 422 U.S. 490, 500 (1975); *Southern Cal. Edison Co. v. F.E.R.C.,* 502 F.3d 176, 180 (D.C. Cir. 2007) ("in reviewing the standing question, the court… must therefore assume that on the merits the [plaintiffs] would be successful in [their] claims"). Put simply, the contrary approach "confuses standing with the merits." *Initiative & Referendum Institute v. Walker,* 450 F.3d 1082, 1092 (10th Cir. 2006), because "'standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal.'" *McConnell v. FEC,* 540 U.S. 93, 227 (2003) (quoting *Warth,* 422 U.S. at 500); *Tyler v. Cuomo,* 236 F.3d 1124, 1133 (9th Cir. 2000) ("[w]hether a plaintiff has a legally protected interest (and thus standing) does not depend on whether he can demonstrate that he will succeed on the merits"). Otherwise, every losing plaintiff would lose for lack of standing.

B.      **The Memorandum causes Texas economic injury that the Court can redress.**

As Texas amply demonstrates, the Memorandum will cause Texas economic injury that this Court can redress. Texas Memo. at 10-11, 22-25 (ECF #62). Under Circuit precedent, those injuries suffice for an Article III case or controversy. *Texas v. United States*, 809 F.3d 134, 150 (5th Cir. 2015) ("standing is plain, based on the driver's-license rationale, so we need not address the other possible grounds for standing"), *aff'd by an equally divided Court*, 136 S.Ct. 2271 (2016). As the Fifth Circuit held, no more is required for standing.

C.      **Because Texas alleges procedural injuries, the Article III thresholds for immediacy and redressability are easily met.**

Significantly, because Texas alleges procedural violations, *see* Section III.B, *infra*, the bar for Article III standing is lowered. "The history of liberty has largely been the history of observance of procedural safeguards," *Corley v. United States*, 556 U.S. 303, 321 (2009) (interior quotation marks omitted), and "'procedural rights' are special," *Defenders of Wildlife*, 504 U.S. at 572 n.7 (interior quotation marks omitted). For procedural injuries, Article III's redressability and immediacy requirements apply to the *present procedural violation* (which may someday injure a concrete interest) rather than to a concrete future injury. *Defenders of Wildlife*, 504 U.S. at 571-72 & n.7; *cf. DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 & n.5 (2006) ("once a litigant has standing to request invalidation of a particular [government] action, [the litigant] may do so by identifying all grounds on which the agency may have failed to comply with its statutory mandate"); *Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 78-81 (1978) (standing doctrine has no nexus requirement outside taxpayer standing). Texas's allegations of procedural-rights violations thus undercut the potential claim that Texas lacks a sufficiently immediate injury.

Importantly, when it comes to redressability, Texas need not show that notice-and-

comment rulemaking would result in a rule more to its liking: "If a party claiming the deprivation

of a right to notice-and-comment rulemaking under the APA had to show that its comment would

have altered the agency's rule, section 553 would be a dead letter." *Sugar Cane Growers Co-op.*

*of Fla. v. Veneman*, 289 F.3d 89, 95 (D.C. Cir. 2002). Instead, here, *vacatur* would put the parties

back in the position they should have been in all along, and thus provide enough redress, even if

the federal defendants *potentially could* take the same action on remand, leaving Texas no better

off in the end. *Vacatur* and remand redress the injury "even though the agency (like a new jury

after a mistrial) might later, in the exercise of its lawful discretion, reach the same result for a

different reason." *FEC v. Akins*, 524 U.S. 11, 25 (1998). When considered in the procedural-rights

context, Texas's standing is particularly obvious.

## II.   THE MEMORANDUM IS REVIEWABLE.

Although this Court already has held that the Memorandum is subject to judicial review,

the defendants may argue otherwise. If they do, the seek to swim upstream not only against the

APA's "generous review provisions" that require "hospitable interpretation," *Abbott Laboratories*

*v. Gardner,* 387 U.S. 136, 140-41 (1967), but also against the strong presumption of judicial

review. *Mach Mining, LLC v. EEOC*, 575 U. S. 480, 486 (2015). As the Supreme Court recently

explained, ambiguity should be resolved in the plaintiff's favor:

> To the extent there is ambiguity in the meaning of "any final decision," it must be resolved in [the plaintiff's] favor under the strong presumption favoring judicial review of administrative action. This default rule is well-settled, and Congress is presumed to legislate with it in mind. To rebut the presumption, the [agency] bears a heavy burden of showing that the statute's language or structure forecloses judicial review.

*Salinas v. United States Railroad Retirement Bd.*, No. 19-199, 2021 U.S. LEXIS 753, at *14 (Feb.

3, 2021) (citations and interior quotation marks omitted). As this Section explains, the availability

of review is not at all ambiguous here.

A.     __The APA does not preclude review.__

As this Court found in granting the TRO, none of the APA exemptions that the defendants cite precludes review here. Texas clearly has an APA cause of action to vacate the Memorandum.

First, the decision to adopt a written policy to cease or even pause all removals is not committed to agency discretion within the meaning of 5 U.S.C. §701(a)(2). The *Heckler v. Chaney,* 470 U.S. 821 (1985), line of enforcement-discretion cases does not apply to written rules. Indeed, *Heckler* specifically exempts the "abdication" claim in *Adams v. Richardson,* 480 F.2d 1159, 1161-63 (D.C. Cir. 1973) (*en banc*), for review of conscious, express policies of nonenforcement:

> Nor do we have a situation where it could justifiably be found that the agency has "consciously and expressly adopted a general policy" that is so extreme as to amount to an abdication of its statutory responsibilities. *See, e. g., Adams v. Richardson, ...* 480 F.2d 1159 (1973) (*en banc*).

*Heckler,* 470 U.S. at 833 n.4; *accord id.* at 839 ("the Court … does not decide today that nonenforcement decisions are unreviewable in cases where … an agency engages in a pattern of nonenforcement of clear statutory language, as in *Adams v. Richardson*") (Brennan, J., concurring) (citations omitted). In *Adams,* the conscious policy—namely, failing to terminate federal funding for segregated schools found to have discriminated based on race in violation of Title VI—was unwritten, but nonetheless a conscious policy of nonenforcement.

By contrast, for *written rules* such as the Memorandum that "apply[] some particular measure across the board," "of course" a "challenge[] under the APA" is available. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890 n.2 (1990). Indeed, it is commonplace to require considering *applications* of federal standards in a specialized forum while allowing APA review of the *federal standards themselves* in federal court:

> While the Act vested state courts with exclusive jurisdiction over claims challenging a state agency's application of federal guidelines to the benefit claims of individual employees, there is no indication

5

> that Congress intended § 2311(d) to deprive federal district courts of subject-matter jurisdiction under [28 U. S. C. §1331] to hear statutory or constitutional challenges to the federal guidelines themselves.

*Int'l Union v. Brock,* 477 U.S. 274, 285 (1986). Finally, the suggestion of a narrowly confined judicial review is belied by the availability of judicial review under the circumstances here both before and after APA's enactment, and by the lack of an express repeal of that review.[1]

Second, as Texas amply explains, the Memorandum qualifies as final agency action under 5 U.S.C. §704 and the two-part test in *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). *See* Texas Memo. at 9-10 (ECF #62). As the Supreme Court explained, such across-the-board programmatic policies can qualify as "final agency action" and fall under APA review. *Nat'l Wildlife Fed'n*, 497 U.S. at 890 n.2. In short, nothing bars APA review here.

### B.   The *Ex parte Young* officer-suit exception to sovereign immunity would allow review, even of the APA did not.

Even before the original APA provided a cause of action or the APA's 1976 amendments waived federal sovereign immunity, judicial review was available in equity suits against federal officers: "where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions." *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949); *Ex parte Young,* 209 U.S. 123, 160 (1908); *United States v. Lee,* 106 U.S. 196, 213 (1882). Unlike the agencies for which they work, the individual federal

---

[1]   Although the APA—as enacted—did not override any pre-APA statute that *expressly or impliedly* denied review, 5 U.S.C. §702 ("[n]othing herein … confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought"), post-APA statutes like the INA must deny review *expressly.* 5 U.S.C. §559 ("[s]ubsequent statute may not be held to supersede or modify this subchapter …, except to the extent that it does so expressly"); *Dickinson v. Zurko,* 527 U.S. 150, 154-55 (1999). Because nothing in the INA expressly (or even impliedly) removes APA review, the INA does not preclude judicial review. *See* Section II.C, *infra*.

defendants lack sovereign immunity here.

Under our common-law heritage, "[t]he acts of all [federal] officers must be justified by some law, and in case an official violates the law to the injury of an individual the courts generally have jurisdiction to grant relief." *Am. Sch. of Magnetic Healing v. McAnnulty,* 187 U.S. 94, 108 (1902). Significantly, the availability of declaratory relief against federal officers predates the APA, WILLIAM J. HUGHES, FEDERAL PRACTICE §25387 (1940 & Supp. 1945); EDWIN BORCHARD, DECLARATORY JUDGMENTS, 787-88, 909-10 (1941), and the APA did not displace that relief. *See* Administrative Procedure Act, Legislative History, 79th Cong., S.Doc. No. 248, 79th Cong., 2d Sess., at 37, 212, 276 (1946); *Dart v. U.S.,* 848 F.2d 217, 224 (D.C. Cir. 1988) ("Nothing in the [APA's] enactment … altered the *McAnnulty* doctrine of review …. It does not repeal the review of *ultra vires* actions recognized long before, in *McAnnulty*"); *Harmon v. Brucker,* 355 U.S. 579, 581-82 (1958) (relying on *McAnnulty* for the proposition that "generally, judicial review is available to one who has been injured by an act of a government official which is in excess of his express or implied powers"). "Under the longstanding officer suit fiction …, … suits against government officers seeking prospective equitable relief are not barred by the doctrine of sovereign immunity." A.B.A. Section of Admin. Law & Regulatory Practice, *A Blackletter Statement of Federal Administrative Law,* 54 ADMIN. L. REV. 1, 46 (2002). Thus, provided that a plaintiff alleges an ongoing violation of federal law, longstanding equity practice allows suing federal officers who act beyond their lawful authority. Even before the APA's enactment in 1946, therefore, Texas could have gotten a preliminary injunction against the Memorandum.

### C.   The INA does not preclude review.

As Texas explains, the cited INA provisions restricting challenges by aliens do not apply to Texas, Texas Memo. at 6-7 (ECF #62); *accord* TRO Order, at 7 (ECF#16), and thus the INA does not "preclude judicial review" under 5 U.S.C. §701(a)(1) or commit review to a "special

statutory review proceeding relevant to the subject matter in a court specified by statute" under 5 U.S.C. §703. See Section II.A, *supra*.

## III.   TEXAS IS LIKELY TO PREVAIL ON THE MERITS.

The first—and most important—*Winter* factor is the likelihood of the plaintiff's prevailing. *Winter,* 555 U.S. at 20. Texas is likely to prevail because the Memorandum violates not only the INA substantively but also the APA procedurally.

### A.   <u>The Memorandum is substantively invalid.</u>

As Texas explains, the Memorandum violates the INA, Texas Memo. at 11-13 (ECF #62), and that violation renders the Memorandum a nullity. *See* 5 U.S.C. §706(2)(B)-(C); *Manhattan Gen. Equip. Co. v. Commissioner*, 297 U.S. 129, 134 (1936) (holding that a "regulation [that] … operates to create a rule out of harmony with the statute, is a mere nullity" because an agency's "power … to prescribe rules and regulations … is not the power to make law" but rather "the power to adopt regulations to carry into effect the will of Congress as expressed by the statute"). Except for the question of the deference that this Court should afford to DHS's statutory interpretation, it does not matter whether the federal defendants affirmatively intended to violate the INA or did so inadvertently.

### 1.   Defendants are not entitled to deference.

Depending on the circumstances, a DHS action under the INA may warrant a reviewing court's "*Skidmore*" or "*Chevron*" deference. *Siwe v. Holder*, 742 F.3d 603, 607 (5th Cir. 2014).[2]

---

[2]     Under *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944), courts defer to an agency interpretation based on the "thoroughness evident in the [agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it the power to persuade, if lacking power to control." By contrast, under *Chevron,* courts owe deference to an agency's plausible construction of an interstitial gap in a statute under that agency's administration as delegated by Congress (*Chevron* prong two), unless the Court can interpret the

Under the circumstances here, this Court should not defer to the federal defendants at all.

As explained in Section III.A.2, *infra,* the Memorandum violates the INA. Consequently, this Court can resolve the issues here under *Chevron* prong one, and thus obviate the need for deference, even assuming *Chevron* applies. When "Congress has directly spoken to the precise question at issue," "that is the end of the matter" and a "court … must give effect to the unambiguously expressed intent of Congress," on which courts are "the final authority." *Chevron*, 467 U.S. at 842-43 & n.9. Further, "*Chevron* deference is not accorded merely because the statute is ambiguous and an administrative official is involved. A rule must be promulgated pursuant to authority Congress has delegated to the official." *Gonzales v. Oregon,* 546 U.S. 243, 248 (2006). Because the INA speaks clearly to these issues, *Chevron* deference has no place here.

Similarly, under *Skidmore*, the Memorandum's failure to consider the implications of, and alternatives to, pausing removals should cause this Court to reject whatever *post hoc* rationalizations the federal defendants provide. Under both APA and pre-APA judicial review, "the courts may not accept … counsel's post hoc rationalizations for agency action [because] an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983); *SEC v. Chenery Corp.,* 318 U.S. 80, 88 (1943) (same for pre-APA equity suits). Here, nothing is the threadbare record warrants any deference.

When the Court reaches the merits, the Court will need to do so on the "the whole record or those parts of it cited by a party," 5 U.S.C. §706; *Medina Cty. Envtl. Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010), and it is unclear yet what parts of the record the

---

statute's requirements using traditional tools of statutory construction (*Chevron* prong one). *Chevron U.S.A., Inc. v. N.R.D.C.,* 467 U.S. 837, 842-44, 865-66 (1984).

parties will cite on the merits. At this point, however, it is clear that the federal defendants have not provided Texas or this Court with the *whole* record. The Memorandum's document "properties" on the DHS website indicate "Olavarria, Esther M. EOP/WHO" as the document's author. *See* Joseph Decl. at 2 (¶6). With a non-DHS person as (at least) the Memorandum's *initial* author, there must have been correspondence between Ms. Olavarria—presumably in her role in the Executive Office of the President ("EOP")—and DHS to transmit her and EOP's initial draft. *Amicus* IRLI respectfully submits that both the EOP-DHS correspondence and the initial EOP draft should be part of the record and are relevant to whether this Court defers to DHS for its INA expertise. *See Home Box Office, Inc. v. FCC*, 567 F.2d 9, 57 & n.130 (D.C. Cir. 1977) (record should include "comments and other documents submitted by interested persons" and "written document or a summary of any oral communication" of any "*ex parte* contacts") (internal quotation marks omitted); *La Union Del Pueblo Entero v. FEMA*, 141 F. Supp. 3d 681, 693-94 (S.D. Tex. 2015) ("reviewing court must base its decision … on the … the full administrative record that was before the agency at the time of the decision") (internal quotation marks omitted). That record should include the transmittal of the Memorandum from its EOP author to DHS.

## 2.      Pausing removals across the board for 100 days violates the INA.

The Memorandum undermines the entire INA by removing the prospect of removal and, thus, mandatory detention pending removal. Specifically, under 8 U.S.C. §1225(a)(1), "an alien present in the United States who has not been admitted … shall be deemed for purposes of this chapter an applicant for admission." That designation triggers 8 U.S.C. §1225(a)(3), which requires that all applicants for admission "shall be inspected by immigration officers," which inspection triggers 8 U.S.C. §1225(b)(2)(A)'s mandate that "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained for a [removal] proceeding under section 1229a of this title."

8 U.S.C. §1225(b)(2)(A) (emphasis added). The Memorandum undermines this core INA mandate.

Because these immigration detentions are civil—not criminal—detentions, however, any detention must be in the service of removal and cannot be punitive or indeterminate in duration. *Zadvydas v. Davis*, 533 U.S. 678, 699-700 (2001). Detained aliens must, therefore, be released absent a "significant likelihood of removal in the foreseeable future" or "SLRFF." While the Memorandum's 100-day pause may appear to the uninformed as merely a good idea while a new administration considers policies, the pause actually—and presumably, intentionally[3]—frustrates mandatory aspects of INA enforcement: "Congress did not place the decision as to which applicants for admission are placed in removal proceedings into the discretion of the Attorney General but created mandatory criteria." *Succar v. Ashcroft*, 394 F.3d 8, 10 (1st Cir. 2005). "[W]hile the President has broad authority in foreign affairs, that authority does not extend to the refusal to execute domestic laws." *Massachusetts v. EPA*, 549 U.S 497, 534 (2007). In essence, the Memorandum short circuits the entire removal process.

While an agency faced with limited resources necessarily has discretion to implement congressional mandates as best it can, the power to set priorities for action does not authorize ignoring all statutory mandates: "the agency administering the statute is required to effectuate the original statutory scheme *as much as possible*, within the limits of the added constraint." *City of Los Angeles v. Adams*, 556 F.2d 40, 50 (D.C. Cir. 1977) (emphasis added). The Memorandum did not "effectuate the original statutory scheme as much as possible" within any parameters. For its part, Congress has found that "immigration law enforcement is as high a priority as other aspects

---

[3] The Court need not decide the issue of intent at this stage. Either a preliminary injunction is warranted because the federal defendants intentionally seek to frustrate INA enforcement or one is warranted because the federal defendants were oblivious to the consequences of their actions, enacted without the required APA rulemaking during which Texas could have commented on these issues.

of Federal law enforcement, and illegal aliens do not have the right to remain in the United States undetected and unapprehended." H.R. REP. NO. 104-725, at 383 (1996) (Conference Report). Congress has also passed laws designed to reduce the incentives for illegal entry, and to incentivize self-deportation where enforcement is lacking. *Texas v. United States*, 86 F. Supp. 3d 591, 634-35 (S.D. Tex. 2015) (arguing that blanket use of enforcement discretion in prior immigration policy would disincentivize illegal aliens from self-deporting); Michael X. Marinelli, *INS Enforcement of the Immigration Reform and Control Act of 1986: Employer Sanctions During the Citation Period*, 37 CATH. U. L.R. 829, 833-34 (1988) ("Congress postulated that unauthorized aliens currently in the United States would be encouraged to depart") (*citing* H.R. REP. NO. 99-682, at 46 (1986)). Thus, the Memorandum does not implement the INA but rather seeks to amend or to eviscerate the INA's mandatory treatment of illegal aliens under orders of removal.

Under 8 U.S.C. §1103(a)(3), "[the Secretary] … shall establish such regulations; prescribe such forms of bond, reports, entries, and other papers; issue such instructions; and perform such other acts as he deems necessary for carrying out his authority under the provisions of this chapter." 8 U.S.C. §1103(a)(3). Similarly, under 6 U.S.C. §202(5), "[t]he Secretary … shall be responsible for … [e]stablishing national immigration enforcement policies and priorities." 6 U.S.C. §202(5). That grant of authority cannot authorize the Memorandum because the authority to set "priorities" does not authorize violating the INA. These provisions clearly fail to authorize the Memorandum, which is not "necessary for carrying out" any part of the INA. In any event, only if DHS's authority under these sections were both unlimited and unreviewable could these provisions grant authority for the Memorandum. But, in that case, §1103(a)(3) and §202(5) would grant DHS a limitless authority over how it carries out its duties, making meaningless the numerous other INA provisions that detail how DHS is to do so. *See*, *e.g.*, 8 U.S.C. §§1228(a)(3) (providing that expedited

proceedings "shall be" initiated for aliens incarcerated for aggravated felonies), 1229a (providing procedural requirements for removal proceedings). If §1103(a)(3) or §202(5) delegated such *carte blanche* authority, they would violate the nondelegation doctrine, which requires "an intelligible principle to which the person or body authorized to exercise the delegated authority is directed to conform." *Mistretta v. United States*, 488 U.S. 361, 372 (1989). Under the doctrine of constitutional avoidance, *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 17-18 (2013), this Court should avoid the constitutional nondelegation issue by reading the statute as not delegating any such authority.

### B.    The Memorandum's promulgation violated the APA's procedural requirements.

As Texas explains, the Memorandum's promulgation violated APA notice-and-comment requirements, Texas Memo. at 16-17 (ECF #62), a violation that triggers this Court's obligation to "hold unlawful and set aside agency action … found to be … without observance of procedure required by law." 5 U.S.C. §706(2)(D). Procedurally infirm rules are nullities and void *ab initio*, *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897, 909-10 (5th Cir. 1983); *McLouth Steel Products Corp. v. Thomas*, 838 F.2d 1317, 1322-23 (D.C. Cir. 1988); *State of Ohio Dep't of Human Serv. v. U.S. Dept. of Health & Human Serv., Health Care Financing Admin.*, 862 F.2d 1228, 1237 (6th Cir. 1988); *North Am. Coal Corp. v. Director, Office of Workers' Compensation Programs, U.S. Dep't of Labor*, 854 F.2d 386, 388 (10th Cir. 1988), even if a rule would have been substantively valid if promulgated via notice-and-comment rulemaking. These procedural infirmities alone render the Memorandum null and void.

While the defendants may argue for APA exemptions, the exemptions for policy statements and interpretive rules do not apply when agency action narrows the discretion otherwise available to agency staff. *Texas*, 809 F.3d at 172-73; *Texas Sav. & Cmty. Bankers Ass'n v. Fed. Hous. Fin.*

13

*Bd.*, 201 F.3d 551, 556 (5th Cir. 2001); *General Elec. Co. v. EPA*, 290 F.3d 377, 380 (D.C. Cir. 2002). When an agency fails to follow the APA procedures ordained by Congress, moreover, the resulting rule violates the core constitutional requirements for making law, which "are *integral* parts of the constitutional design for the separation of powers." *INS v. Chadha*, 462 U.S. 919, 946 (1983) (emphasis added). Valid legislative rules must either satisfy bicameralism and presentment requirements—which "represent[] the Framers' decision that the legislative power of the Federal government be exercised in accord with a single, finely wrought and exhaustively considered, procedure," *Chadha*, 462 U.S. at 951—or they must fully satisfy the limited administrative exemption that the APA provides. *FTC v. Morton Salt Co.*, 334 U.S. 37, 44-45 (1948) ("the burden of proving justification or exemption … generally rests on one who claims its benefits"). Failure either to follow the required APA procedures or to qualify for an APA exemption renders the resulting agency action a bare attempt to make law via administrative fiat. When acting within the APA requirements, a federal agency *might* be on solid ground. When acting outside those requirements, however, a federal agency simply seeks to usurp congressional power.

### C. The Memorandum is arbitrary and capricious.

As Texas explains, the Memorandum's promulgation violated APA prohibition of arbitrary and capricious agency action, Texas Memo. at 13-16 (ECF #62), a violation that independently triggers this Court's obligation to "hold unlawful and set aside" the Memorandum. 5 U.S.C. §706(2)(A). Assuming that the federal defendants did not surreptitiously *intend* to undermine the INA's entire removal process, *see* Section III.A.1, *supra*, the Memorandum is a "slapdash" mistake that this Court should vacate for failure to consider the many facets of the issue that Texas has raised:

> The Commission's order is rife with anomalies, any one of which is
> sufficient to justify a remand, and all of which, *when considered*

> together, demonstrate the Commission was proceeding in a
> slapdash manner.

*LePage's 2000, Inc. v. Postal Regulatory Comm'n*, 642 F.3d 225, 230-31 (D.C. Cir. 2011)

(emphasis added). Texas is likely to prevail on its claim that the Memorandum is arbitrary and

capricious under the APA.

### D.   The Memorandum violates the Take Care Clause.

In granting review in a related enforcement-policy case, the Supreme Court ordered "the

parties … to brief and argue '[w]hether [the DHS policy] violates the Take Care Clause of the

Constitution.'" *United States v. Texas*, 136 S.Ct. 906 (2016). If this Court considers the Take Care

Clause, this Court should rule against defendants either under the Clause itself or under the INA

on constitutional-avoidance grounds.

The failure to "take Care that the Laws be faithfully executed," U.S. CONST. art. II, §3, is

present here because, under separation-of-powers principles, it falls to Congress to make the laws,

to the Executive to enforce the laws faithfully, and to the judiciary to interpret the laws. Under that

division of authority, this Court clearly must reject the Memorandum:

> With all its defects, delays and inconveniences, men have
> discovered no technique for long preserving free government except
> that the Executive be under the law, and that the law be made by
> parliamentary deliberations.
>
> Such institutions may be destined to pass away. But it is the duty of
> the Court to be last, not first, to give them up.

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 655 (1952). Justice Jackson put

*Youngstown* within a "judicial tradition" beginning with Chief Justice Coke's admonishing his

sovereign that "[the King] is under God and the Law." *Id.* at 655 n.27 (interior quotation marks

omitted). Following Coke and Jackson, this Court must reject the Memorandum's overreach here.

## IV.   THE REMAINING *WINTER* FACTORS FAVOR A PRELIMINARY INJUNCTION.

In addition to being likely to prevail on the merits, Texas also meets the other three *Winter* factors for a preliminary injunction.

### A.   Texas is likely to suffer irreparable harm in the absence of preliminary relief.

Applied here, the second *Winter* factor asks whether Texas would suffer irreparable harm absent preliminary relief. Because Congress has not waived sovereign immunity to sue the federal government for damages under the circumstances present here, Texas's economic injuries are irreparable. *See* Texas Memo. at 22-25 (ECF #62). Further, as this litigation makes obvious, Texas has a perspective on removals that it has a right to submit through notice-and-comment rulemaking *before* DHS adopts new rules, 5 U.S.C. §553(b)-(c), and the Memorandum's continuing in effect would irreparably deny that right. Although *Elrod v. Burns*, 427 U.S. 347 (1976), was a freedom-of-association case, its central holding that "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *id.* at 373, applies equally to the right to petition government. *Anderson v. Davila*, 125 F.3d 148, 162 (3d Cir. 1997); *Cate v. Oldham*, 707 F.2d 1176, 1188 (11th Cir. 1983). If this Court needed a harm more pressing than economic injury—and it does not—the continued denial of notice and comment on the Memorandum's promulgation would provide that harm.

### B.   The balance of equities tips in Texas's favor.

The third *Winter* factor balances the equities of granting or denying a preliminary injunction with respect to the parties before the Court. In this litigation, this Court thus must balance Texas's equities against the equities not only of the federal defendants but also of the defendants-intervenors. The balancing tips decidedly to Texas in both cases.

To be sure, government officers have standing to defend governmental actions, *Diamond*

16

*v. Charles,* 476 U.S. 54, 62 (1986), and the irreparable-harm and standing inquiries overlap. *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1508 (D.C. Cir. 1995). But a party must show *more* to establish a cognizable equitable harm. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149-50, 162 (2010). With the Memorandum, neither the federal defendants nor the defendants-intervenors can meet that burden.

Mere agency officers cannot create rights: "*Congress* may create a statutory right … the alleged deprivation of which can confer standing," *Warth*, 422 U.S. at 514 (emphasis added), but agencies cannot. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 577 n.18 (1979). As Justice Scalia colorfully explained, "Agencies may play the sorcerer's apprentice but not the sorcerer himself." *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001). If Executive-Branch officials want to create rights, they need either to work with Congress to enact new legislation or, at least, to act using the APA rulemaking authority that Congress has delegated for agencies to create regulatory rights in furtherance of statutory rights created by Congress. Having taken neither of these two routes, the Memorandum did not create any rights or interests that are cognizable in federal court. Indeed, procedurally invalid rules are void *ab initio*, *see* Section III.B, *supra*, which means "having no effect, as though it had never been passed." *Alexander v. Cockrell*, 294 F.3d 626, 630 (5th Cir. 2002). With the Memorandum, there is no there there.

### C.    An injunction is in the public interest.

The final *Winter* factor is the public interest, which collapses into the merits when a strong showing has been made on the likelihood of prevailing on the merits. *In re Campbell*, 750 F.3d 523, 534 (5th Cir. 2014); *Sunbeam Prods., Inc. v. West Bend Co.*, 123 F.3d 246, 260 (5th Cir. 1997) ("public interest calculus is subsumed within the merits"), *abrogated on other grounds by TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001)). The "public interest may be declared in the form of a statute," *Golden Gate Rest. Ass'n v. City & County of San Francisco*, 512

F.3d 1112, 1127 (9th Cir. 2008) (interior quotation marks omitted), and "there is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" *League of Women Voters of the United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)). Here, the public interest expressed in the APA, the INA, and the Take Care Clause defines the public interest, denying the federal defendants and the defendants-intervenors the grounds on which to press their policy-based arguments.

## **CONCLUSION**

This Court should grant Texas's motion for a preliminary injunction.

Dated: February 9, 2021

Respectfully submitted,

/s/ Lawrence J. Joseph

Christopher J. Hajec
Immigration Reform Law Institute
25 Massachusetts Avenue, NW, Suite 335
Washington, DC 20001
Tel: 202-232-5590
Fax: 202-464-3590
Email: chajec@irli.org

Lawrence J. Joseph
 Counsel of Record
D.C. Bar No. 464777 (admitted *pro hac vice*)
1250 Connecticut Av NW, Ste 700-1A
Washington, DC 20036
Tel: 202-669-5135
Fax: 202-318-2254
Email: ljoseph@larryjoseph.com

*Counsel for Amicus Curiae*