# Exhibit B

## DECLARATION OF DAVID K. HAUSMAN

I, David K. Hausman, upon my personal knowledge, hereby submit this declaration pursuant to 28 U.S.C. § 1746 and declare as follows:

1. I am a postdoctoral fellow in political science at Stanford University, where I study immigration enforcement and administrative courts. I previously worked for the ACLU Immigrants' Rights Project as an attorney and occasionally consult for the project, but I have not done paid work on this case.

2. I have been asked to estimate the number of individuals with final removal orders who are still within the 90-day removal period as defined in 8 U.S.C. § 1231(a)(1). That period is generally 90 days after a removal order becomes administratively final, as defined in § 1231(a)(1)(B)(i). It may start later if the noncitizen seeks judicial review and obtains a stay from the court, § 1231(a)(1)(B)(ii), or is incarcerated in criminal custody at the time the order becomes final, § 1231(a)(1)(B)(iii); it may extend longer than 90 days if the noncitizen falls within the limited exception in § 1231(a)(1)(C).

3. In order to estimate the number of individuals with final removal orders who are in the removal period, I relied on public data, which was current as of December 31, 2020 at the time I performed the analysis, from the Executive Office of Immigration Review, a component of the Department of Justice. That public dataset, available at https://www.justice.gov/eoir/foia-library-0, contains records of all decisions made by Immigration Judges ("IJs") and the Board of Immigration Appeals ("BIA").

4. Removal orders become final if the noncitizen fails to appeal or if the BIA affirms the decision of the IJ. 8 U.S.C. § 1101(a)(47). Noncitizens have 30 days to appeal. 8 C.F.R. § 1003.38(b).

1

5. I first calculated an estimate of the number of individuals in the removal period at a given point in time.

6. I began by counting IJ removal decisions issued in the 90-day-period ending at least 30 days before the last day in the data—in other words, IJ decisions in the 90-day period ending on December 1, 2020. I excluded decisions from the most recent 30 days because there was no way to know from this data whether those individuals appealed. December 1, 2020, is therefore the most recent day for which the dataset I used is complete, including data about whether an appeal was filed.

7. I found **6,032** IJ removal orders entered during the 90-day period ending December 1, 2020 in which the noncitizen did not appeal (6,019 cases) or in which the BIA had already affirmed the decision, dismissed the appeal, or marked the appeal as withdrawn as of December 31, 2020 (13 cases).[1]

8. In addition, I counted the number of affirmances, dismissals, and withdrawals issued by the BIA in the same 90-day period ending December 1, 2020, but where the individual did not receive a removal order from an IJ during that 90-day period. I found **3,956** such cases.

9. Adding these numbers together (6,032 + 3,956), I concluded that, as of December 1, 2020, there were approximately **9,988** removal orders that became final during the previous 90-day period.

10. This calculation provides a snapshot of how many cases were within the removal period on a single day, December 1, 2020. For example, the removal period for an order that became final on November 30 would run for 90 days from that date, so that individual would

---

[1] In counting BIA decisions, I considered only case appeals, since circuit court remands and appeals concerning motions to reopen or bond determinations generally do not result in the entry of a new removal order.

be near the beginning of the removal period on December 1. Which particular people are in the removal period changes every day, but this count from a recent day offers my best estimate of how many people are in the removal period on any given day.

11. This number is approximate as a measure of the total number of individuals in the removal period on December 1, 2020. For example, some of the individuals who lost before the BIA may have sought judicial review and obtained a stay, tolling their removal period. At the same time, other individuals whose orders became final in the past may have lost their cases before federal courts (for which they obtained a judicial stay), beginning their own removal period. Similarly, the other exceptions to the general rule that the removal period begins after the BIA rules could affect the overall number. For example, some who seek judicial review prevail.

12. The deportation pause at issue in this case lasts 100 days. I therefore next estimated how many people might be in the removal period at any point over the course of a given 100 day period. To do so, I calculated how many people were in the removal period over the course of the 100 days ending December 1, 2020. I followed the same procedure as above, except that instead of looking at removal decisions over the 90 days before December 1, 2020, I looked at removal decisions over the 190 days before December 1, 2020. That way, I included all removal decisions reached by IJs or the BIA in the 90 days before each of the 100 days in the 100-day period ending on December 1, 2020.

13. I found **11,902** IJ removal orders entered during the 190-day period ending December 1, 2020 in which the noncitizen either did not appeal (11,495 cases) or in which the BIA had already affirmed the decision, dismissed the appeal, or marked the appeal as withdrawn as of December 31, 2020 (407 cases).

3

14. In addition, I counted the number of affirmances, dismissals, and withdrawals issued by the BIA in the same 190-day period ending December 1, 2020, but where the individual did not receive a removal order from an IJ during that 190-day period. I found **9,261** such cases.

15. Adding these numbers together (11,902 + 9,261), I concluded that, as of December 1, 2020, there were approximately **21,163** removal orders that became final during that 190-day period.

16. These figures reflect final removal orders issued through the ordinary removal process, under section 240 of the Immigration and Nationality Act. They do not include expedited removal orders or other summary procedures, which typically result in swift removal.

17. I understand from the Declaration of Peter Berg filed in this case that there are approximately 1.19 million outstanding removal orders.

18. My estimate of **9,988** individuals in the removal period on any given day represents **.84%** of the total number of outstanding removal orders.

19. My estimate of **21,163** individuals in the removal period during any given 100-day period represents **1.77%** of the total outstanding number of removal orders.

20. I declare under penalty of perjury and under the laws of the United States that the foregoing is true and correct. Executed on February 12, 2021.

*David Hausman*
_____
David K. Hausman

4