# Exhibit C

## DECLARATION OF BRADLEY J. BARTOS, ADAM B. COX, DAVID K. HAUSMAN, CHARIS E. KUBRIN, AND MICHAEL T. LIGHT

We, Bradley J. Bartos, Adam B. Cox, David K. Hausman, Charis E. Kubrin, and Michael T. Light, upon our personal knowledge, hereby submit this declaration pursuant to 28 U.S.C. § 1746 and declare as follows:

1. Bradley J. Bartos is an Assistant Professor in the School of Government and Public Policy at the University of Arizona.

2. Adam B. Cox is the Robert A. Kindler Professor of Law at New York University School of Law.

3. David K. Hausman is a postdoctoral fellow in political science at Stanford University. He previously worked for the ACLU Immigrants' Rights Project as an attorney and occasionally consults for the project, but he has not done paid work on this case.

4. Charis E. Kubrin is a Professor of Criminology, Law and Society at the University of California, Irvine.

5. Michael T. Light is an Associate Professor of Sociology and Chicano/Latino Studies at the University of Wisconsin-Madison.

6. We write to summarize for the Court the social science evidence on the relationship between immigration enforcement and crime. First, empirical studies have uniformly found that interior deportations in the United States do not reduce crime. Second, undocumented immigrants in the United States, and in Texas in particular, commit crimes at lower rates than citizens. Third, there is no evidence that immigration increases crime, but some evidence that immigration reduces crime. Finally, we note an elementary error in the recidivism calculation contained in the Declaration of Bill E. Waybourn (ECF No. 63-11).

1

7. Empirical studies of the effects of interior deportations on crime have uniformly found that such deportations either have no effect or actually increase crime by discouraging noncitizens from reporting crimes.

8. In particular, scholars have found that the rollout of the Secure Communities—U.S. Immigration and Customs Enforcement's ("ICE") primary interior enforcement program, involving immigration arrests in federal, state, and local detention facilities—across U.S. counties, from 2008 to 2013, had no effect on crime rates despite substantial increases in removals.[1]

9. Consistent with these studies, scholars have found that local so-called sanctuary policies, which limit collaboration between local law enforcement and ICE and often lead to the release of some noncitizens from local custody, reduce interior deportations but have no effect on crime.[2] This finding might seem counterintuitive, but recall that local authorities do not release anyone—citizens or noncitizens—unless those individuals have completed their sentence or been deemed neither a danger nor a flight risk as part of a bail determination.

10. Undocumented immigrants in the United States commit crimes at lower rates than citizens. The most recent and reliable evidence of this comes from a study using data from the Texas Department of Public Safety, which found that native-born U.S. citizens in Texas

---

[1] Thomas J. Miles & Adam B. Cox, *Does Immigration Enforcement Reduce Crime? Evidence from Secure Communities*, 57 J. L. & Econ. 937 (2014); Annie Laurie Hines & Giovanni Peri, *Immigrants' Deportations, Local Crime and Police Effectiveness*, IZA Discussion Paper 12413 (2019); Treyger, Elina, Aaron Chalfin, and Charles Loeffler, *Immigration Enforcement, Policing, and Crime*, 13 Criminology & Public Policy (2014).
[2] Ricardo D. Martínez-Schuldt & Daniel E. Martínez, *Immigrant Sanctuary Policies and Crime-Reporting Behavior: a Multilevel Analysis of Reports of Crime Victimization to Law Enforcement, 1980 to 2004*, American Sociological Review 1 (2021); David K. Hausman, *Sanctuary Policies Reduce Deportations Without Increasing Crime*, 44 Proceedings of the National Academy of Sciences 27262 (2020); Charis E. Kubrin & Bradley J. Bartos, *Sanctuary Status and Crime in California: What's the Connection?*, 3 Justice Evaluation Journal 115 (2020); Ricardo D. Martínez-Schuldt & Daniel E. Martínez, *Sanctuary Policies and City-Level Incidents of Violence, 1990-2010*, 36 Justice Quarterly 567 (2019); Daniel E. Martínez, Ricardo D. Martínez-Schuldt, & Guillermo Cantor, *Providing Sanctuary or Fostering Crime? A Review of the Research on "Sanctuary Cities" and Crime*, 12 Sociology Compass 12547 (2018).

are more than twice as likely as undocumented immigrants to be arrested for violent felony crimes.[3]

11. More generally, the consensus from dozens of empirical studies is that immigration either has no relationship with crime or is actually associated with lower crime rates. A recent review of 51 high-quality studies found some evidence that immigration is accompanied by lower crime rates.[4]

12. Finally, we note an elementary error in the recidivism calculation contained in the Declaration of Bill E. Waybourn. Mr. Waybourn found "a recidivism rate (indicated by prior jail time) of approximately 70% for" inmates held on an immigration detainer in Tarrant County, Texas. This figure is not the recidivism rate. The recidivism rate is the probability, after a first conviction, that an individual *will be rearrested or reconvicted*.[5] Mr. Waybourn has instead measured the probability that an individual who *has been arrested* was also previously arrested. By definition, that figure excludes anyone who has completed the sentence for a first crime and but was never rearrested.

13. Consider a simple hypothetical example. Imagine that, in a given year, 100 people are convicted of a crime. In the following three years, 10 of them are rearrested. Now suppose that five of those who are rearrested sometime in those three years happen to be in custody at the time that Mr. Waybourn surveys people in custody, along with five people arrested for first-time offenses. Mr. Waybourn would conclude that the recidivism rate was 50% (5/10) when it was actually 10% (10/100). Counting previous convictions or jail time among

---

[3] Michael T. Light, Jingying He, & Jason P. Robey, *Comparing Crime Rates Between Undocumented Immigrants, Legal Immigrants, and Native-Born Citizens in Texas*, 117 Proceedings of the National Academy of Sciences 32340 (2020).
[4] Graham C. Ousey & Charis E. Kubrin, *Immigration and Crime: Assessing a Contentious Issue*, 2018 Annual Review of Criminology 63 (2018) (conducting meta-analysis of the literature).
[5] *See, e.g.*, National Institute of Justice, Department of Justice, Recidivism, https://nij.ojp.gov/topics/corrections/recidivism.

3

people currently in custody does not provide enough information to calculate the recividism rate. As a result of this basic mistake, the recidivism figure is incorrect.

14. We declare under penalty of perjury and under the laws of the United States that the foregoing is true and correct. Executed on February 12, 2021.

/s/ Bradley J. Bartos
Bradley J. Bartos

/s/ Adam B. Cox
Adam B. Cox

/s/ David K. Hausman
David K. Hausman

_____
Charis E. Kubrin

_____
Michael T. Light