Exhibit E

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

VICTORIA DIVISION

| | |
|---|---|
| STATE OF TEXAS<br><br>   *Plaintiff*,<br><br>v.<br><br>UNITED STATES OF AMERICA, *et al.*,<br><br>   *Defendants*,<br><br>and<br><br>FIEL HOUSTON, *et al.*,<br><br>   *Intervenor-Defendants*. | Case No. 6:21-cv-00003 |

### DECLARATION OF ALAIN CISNEROS
**(pursuant to 28 U.S.C. § 1746)**

 I, Alain Cisneros, am over the age of 21 and fully competent to make this declaration. Under penalty of perjury, I declare the following based on my personal knowledge:

1. I am the Campaign Coordinator at FIEL Houston, where I manage our advocacy campaigns and am the primary point of contact with our clients and their families.

2. As previously explained by our Executive Director, FIEL provides legal, advocacy, and education services for its nearly 11,000 members in the greater Houston area. More than 75% of our members are part of mixed-status families that include some individuals who are without status and others who are U.S. citizens. In most such families, the parents are undocumented while the children are U.S. citizens.

3. In my capacity as Campaign Coordinator, I work closely with FIEL's deportation defense team and am regularly in contact with clients who are under threat of deportation. Naturally, I also get to know their families and the communities they are part of.

4. One of the main fears that these clients repeatedly express to me is that, should they be deported, they would be separated from their children. Most of these children were born and raised in the U.S. and know no other home. Parents with final removal orders describe the constant fear that any minor infraction, such as a traffic ticket, could lead to long-term family separation and completely upend their children's lives. Many have made arrangements for caretakers, such as extended family members or close friends, who are to assume responsibility for their children should they be deported.

5. Almost daily, I have interacted with and gotten to know such families. After the January 20 DHS Memorandum was issued, many of our clients breathed a sigh of relief that, at least for now, the looming fear that they feel every day had subsided. However, after the deportation pause was stayed, many reached out to FIEL panicked and uncertain about what to expect.

6. I was recently in contact with several community members who shared with me the difficult decisions they have to make as parents and caretakers who have final removal orders hanging over them.

7. For example, an asylum-seeker and father to three U.S.-citizen daughters who has lived in the country for decades, described the anxiety he feels every time he reports for his regular check-ins with ICE. His wife and three daughters always accompany him because they are afraid that if ICE decides to deport him, they won't have a chance to say goodbye.

8. Another case I am aware of is of an individual who is the primary caretaker of his two nieces who were born in the U.S. Their mother suffers from mental health problems and

abandoned her daughters, leaving them in the care of their uncle. He fears of that if he is deported, the girls will be placed in the foster care system and possibly split up. The psychological trauma of having been abandoned twice, he notes, would have a lasting impact on his nieces. The thought of this scenario clouds his future and causes him constant anxiety.

9. Those left behind, the spouses, children, family, and community members, describe the lasting toll of having a loved one deported. A woman with five U.S.-born children whose husband was deported recounted how it's a struggle to make ends meet and she must rely on the generosity of extended family and friends for support. Children, traumatized by the sudden loss of a parent, wake up crying in the middle of the night from nightmares and have difficulty concentrating in school.

10. In a particularly heart-wrenching case, I recall a mother of three who was pulled over for a missing license plate, arrested, and eventually deported. Her youngest son would constantly ask his father where his mother was and whether she would return to tuck him in at night. Her middle child developed cancer and she sought a humanitarian visa to visit him but was denied. He passed away a few months later.

11. As I have observed through my work, the harm deportation radiates outward, beyond just the individual, to their family and loved ones. It is a constant source of fear and anxiety and profoundly impacts how people engage with the world around them. And of course, the pain of having a loved one, especially a parent, deported lingers for those "left behind" who are, in many cases, young children who have only ever known America as home.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on February 11, 2021

_____
Alain Cisneros

4